# Byrd v. Beall.

*Damages for Breach of Contract.*

(Decided April 18, 1907.   43 So. Rep. 749.)

1. *Customs and Usages; Definition.*—The term, custom, refers to the usages which have existed and been universally recognized for such a period of time as to acquire the force of law and be binding upon the individual without his assent; usage refers to an established method of dealing adopted in a particular place or by these engaged in a particular vocation or trade and obtains legal force because people contract in reference thereto.

2. *Sales; Contract; Construction.*—A contract guaranteeing the count and inspection of all lumber at destination means that the seller guaranteed that the lumber, upon reaching destination to come up to the count and inspection specified in the bills rendered to buyer and has no reference to evidence necessary to prove what the real condition of the lumber was on arrival at point of destination.

3. *Custom and Usage; Knowledge.*—In order to bind a person by usage it must be shown to have been known by the party sought to be bound, or so generally known as to raise the presumption that the party knew it and contracted with reference to it.

4. *Same; Evidence.*—Where it was shown that it was the custom for the mill men and shippers to settle according to reports as to count, inspection and freight received by shippers from

the consignee at point of destination, such was not sufficient to prove a general custom or a usage so generally recognized as to be binding.

5. *Same; Validity.*—A usage is illegal which compels a shipper of lumber under a contract guaranteeing count and inspection at destination to settle on the unsworn report of the consignee transmitted to such shipper by the unsworn statement of the party ordering the lumber and which deprives the shipper of the right to resort to the ordinary means of ascertaining the truth of such report.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by W. W. Beall against R. W. Byrd. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

This was an action upon a contract the terms of which are sufficiently set out in the opinion of the court. The assignments of error are that the court erred in overruling defendant's objection to the following question, propounded to plaintiff: "State whether or not, at the time of the lumber transaction between you and Epperson Lumber Company, and out of which this suit sprung, and prior thereto, there was prevailing in this section of the country among mill operators and shippers of lumber a custom with reference to the course of dealing on the subject of culls and rejects, in cases where lumber was shipped under the contract containing a guaranty of count and inspection guarantied at point of destination,"—and in overruling defendant's motion to exclude what that custom was, as stated by the witness in his answer, that under the circumstances stated the millmen and shippers settled, according to report, as to count, inspection, freight, etc., received by the shippers from consignees at point of destination, and that in all of his experience he had never known of the refusal of a millman to so settle; and also the oral charge of the court, as follows: "I charge you, gentlemen of the jury, that there is in this case proof of the custom prevailing upon millmen and lumber dealers during the time covered by the transaction here to the effect that a consignee of lumber, where count and inspection are guarantied at point of destination, may re-

ject that not coming up to specification, and charge the difference to the consignor, and render him a statement, and that the consignor settle by that statement. Now, if you believe that such custom existed as stated, then I charge you that the consignee in this case had the right to charge the plaintiff with the rejects and culls, and the plaintiff had the right thereupon to charge the defendant with such rejects and culls according to the statements received from the consignee at point of destination." There was judgment for plaintiff, and defendant appeals.

W. O. MULKEY; for appellant.—It is an elemental principle of law that any usage the practice of which opens the door to fraud and dishonesty and in fact, which invites it, will not be sanctioned by the law.

The usage in question was contrary to law and the rules of evidence.—*First National Bank v. Nelson,* 105 Ala. 180; *R. & D. R. R. Co. v. Hissong,* 97 Ala. 187; *Railroad Co. v. Johnson,* 75 Ala. 596; *Barlow v. Lambert,* 28 Ala. 704; *Russell's Case,* 63 Ala. 356. The burden of proof is on the party setting up the usage to show all the elements essential to it.—3 Enc. of Evi. 956. A person sought to be charged by a usage at the time of the contract must have knowledge of the use and the contract must have been entered into with reference to it.—*Railroad Co. v. Johnson, supra*; 27 A. & E. Enc. of Law, 743.

C. D. CARMICHAEL, for appellee.—Counsel discusses each assignment but cites no authority.

SIMPSON, J.—This suit was brought by the appellee (plaintiff) against the appellant (defendant), claiming damages for the breach of an agreement by which, in consideration of certain property transferred to him ,the defendant had agreed to deliver to plaintiff all of the output of a certain lumber company, in which agreement it was stated that "count and inspection of all lumber at the point of destination" was guarantied by said defendant. The case was really tried on the common counts, the contract was in evidence, and the

only point in controversy is as to the correctness of the ruling of the court in admitting proof of a certain custom, or usage, and in the charge of the court recognizing the binding efficacy of said usage.

Plaintiff introduced in evidence a letter by defendant to plaintiff, dated May 12, 1904, in which is stated: "The culls you charge seem awfully heavy, but if they are correct we will stand them." And it was shown that said letter was written "in reply to the statement sent defendant by plaintiff, including the account sued on." It was shown that the "plaintiff was dealing in lumber as a broker, and would get orders for lumber by the car load from third persons, and would direct the defendant, Byrd, to fill these orders under the contract herein set out. The defendant would consign the lumber to such persons as plaintiff might direct, and would charge the amount to plaintiff under the contract. 'Culls' and 'rejects' were of a lower order or grade of lumber than the contract called for, and would therefore be subect to lower prices, and in many instances the consignee would reject a lot of it, and claim a lot of it as culls, and would charge the difference to the plaintiff and settle with him accordingly," and plaintiff would send a statement to the defendant, charging such "culls" and "rejects," just as they had been charged to him, and that plaintiff had no personal knowleedge as to the culls and rejects. While plaintiff was on the stand, he was asked the question, whether or not, "at the time of the lumber transaction, * * * and prior thereto, there was prevailing in this section of country, among mill operators and shippers of lumber, any custom with reference to the course of dealing, on the subject of culls and rejects, in cases where lumber was shipped under contract, and the contract containing a guaranty of count and inspection at poit of destination." The answer was "that the custom was to the effect that, under the circumstances stated, the millmen and shippers settled according to reports, as to count, inspection, freight, etc., received by the shippers from consignees at the point of destination, and that in all of his experience he had never known of the refusal of a millman to so settle." This is the evidence in regard to

the custom or usage which is exceptecd to, and on which the charge of the court is based.

Strictly speaking, there is a distinction between "custom" and "usage"; "custom" referring rather to those usages which have existed and been universally recognized for so long a period as to have acquired the force of law, and to be binding without regard to the assent of the individual, and such as the "law merchant," etc., while "usage" refers to "an established method of dealing, adopted in a particular place, or by those engaged in a particular vocation or trade, which acquires legal force because people make contracts in reference to it." —29 Am. & Eng. Ency. Law, 365; 12 Cyc. 1033. While they are frequently used interchangeably, it is a usage, strictly speaking, which is sought to be proved in this case. In discussing it we may, in following the wording of decisions, use the word "custom." While it is difficult to lay down in precise language rules which will make it clear in every case just where the line is which marks the admissibility or not of proof of a usage, yet there are certain general principles which are fully recognized by the authorities:

First. Where the contract itself is clear and unambiguous, and free from words, technical or otherwise, which may have different meanings, the words of the contract must govern, and no evidence can be received of a usage which would change the plain meaning of the contract.—29 Am. & Eng. Ency. Law, 376, and cases cited thereafter. The only ambiguous expression to which attention is called is that in which the defendant guarantied the "count and inspection of all lumber at the point of destination." We are disposed to think that this provision can mean nothing but that the defendant guaranties that the lumber, when it reaches the point of destination, shall come up to the count and inspection as in the bills rendered to the plaintiff. It certainly has no reference to the evidence which will be necessary to prove what the real condition of the lumber was when it reached the point of destination.

Second. A usage, to be binding, must be either shown to be known to the party who is sought to be affected thereby, or so general and so generally known as to jus-

tify the presumption that said party knew it and contracted in reference to it.—29 Am. & Eng. Ency. of Law, pp. 386, 387, 389, 391; 12 Cyc. 1039-1041; 2 Mayfield's Dig. p. 1006, § 29; *Turner v. Dawson,* 50 Ill. 85; *Smith & Co. v. Rice,* 56 Ala. 417, 420, 423. The question asked the witness was simply whether there was "any custom," etc., and his answer was "that the custom was," etc., and that in all his experience he had never known a millman to refuse to settle in the manner named. This falls short of proving the generality of the custom or usage, and does not show at all that any usage was generally recognized as binding, but merely that they settled on these reports. This seems to be rather a habit, for convenience, or because the parties chose to take the word of those who reported, rather than a waiver of the right to have legal proof.—*Jones v. Chaffin,* 102 Ala. 382, 15 South. 142.

While there are some exceptions, another requirement is that the usage must be reasonable, and not "oppose or alter established legal principles, and upon a given statement of facts make the rights or liabilities of individuals other than they are at common law" (29 Am. & Eng. Ency. Law, 376; 12 Cyc. 1047), as a usage of attorneys to collect claims in depreciated bank bills (*West, Oliver & Co. v. Ball & Cromlin,* 12 Ala. 340, 346) ; or a usage which exempts carriers by water from liability caused by forcible and illegal seizure of goods, when the bill of lading excepted only "dangers of the river" (*Boon & Co. v. Str. Belfast,* 40 Ala. 184, 188, 88 Am. Dec. 761) ;; or a usage that, when the contract of hiring specified that "the hirer was to lose the negro's lost time," that time "relateed to time lost by sickness or running away, and not to time lost in consequence of the negro's death" (*Barlow v. Lambert,* 28 Ala. 704, 709, 65 Am. Dec. 374) ; or where a usage among builders considered defective construction as "done in a workmanlike manner" (*Anderson v. Whittaker & Jeffries,* 97 Ala. 690, 693, 11 South. 919) ; or a usage that a bill of lading passed by delivery without indorsement, so as to authorize the delivery of the goods to the holder (*L. & N. R. R. Co. v. Barkhouse,* 100 Ala. 543, 544, 13 South. 534) ; or a usage that bank checks

payable to a pereson, "or bearer," should pass to a holder without indorsement (*First National Bank v. Nelson,* 105 Ala. 180, 196, 16 South. 707); or a custom or usage that a tenant should have the hay and stubble on the land which he entered (*Anewalt v. Hummel,* 109 Pa. 271, 274); or a custom or usage that the outgoing tenant shall look exclusively to the incoming tenant, and not to the landlord, for compensation for seeds, acts of husbandry, etc. (*Bradburn v. Foley,* Eng. High Court of Justice, Common Pleas, Feb., 1878; Alb. Law Journal, p. 483)—all of which were declared bad.

In the light of these authorities we hold that a usage which compelled the shipper of lumber, under the contract in question, to abide by the mere unsworn report of the consignee (in whose selection he had no voice), transmitted to him by the unsworn statement of the party ordering the lumber, and deprived the shipper of the right to resort to the ordinary means of ascertaining the truth of such reports by the ordinary rules of evidence, is bad, and should not be allowed. It results that the court erred in not sustaining the objections to the evidence, and in giving the charge excepted to.

The judgment of the court is reversed, and the cause remanded.

TYSON, C. J., and HARALSON and DENSON, JJ., concur.