## WILLIAM STEIN, SOLE TRADER UNDER THE NAME OF STEIN BROS. v. SOL SHAPIRO.[1]

### January 30, 1920.

### No. 21,576.

**Sale — payment on delivery not affected by previous dealing or alleged custom.**

> Previous dealings, or a well established usage or custom of a trade, cannot inject into a sales contract an obligation on the part of the seller to deliver the goods sold, upon being tendered a draft drawn by the buyer's agent upon the buyer.

Action in the district court for Morrison county to recover $1,300 for breach of contract. The facts are stated in the opinion. The case was tried before Roeser, J., and a jury which returned a verdict for $250. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*E. A. Kling,* for appellant.
*David London,* for respondent.

HOLT, J.

Damages were awarded for defendant's failure to deliver goods he had contracted to sell plaintiff. Defendant appeals from an order denying a new trial.

Both parties deal in hides, plaintiff buying from the smaller dealers. Plaintiff's place of business is at Rice Lake, Wisconsin, and defendant's

[1]Reported in 176 N. W. 54.

at Little Falls, this state. Jack Stein was plaintiff's traveling agent, who, on December 21, 1918, made a contract to purchase, at prices specified, all the hides that defendant might have on hand between the fifteenth and twenty-fifth of January following. A draft for $300, to apply on the purchase, was given when the contract was made. On January 23 Jack Stein came to Little Falls to inspect, bundle and weigh the hides that defendant had on hand. Before the work was completed Stein found some fault with the condition of the hides, and defendant stated that he would not deliver them except upon receipt of the balance of the purchase price in cash. Stein drew a draft on plaintiff for $2,114.77, the balance of the purchase price, and gave it to defendant. Stein claims the draft was accepted. Defendant claims it was left on his desk against his protest that he would not accept it or ship the hides until he obtained his pay in money. At any rate, while Stein was at the depot waiting to depart, he telephoned defendant that if he, defendant, thought he could get away with the dirty trick of soaking the hides before they were weighed, he was mistaken. Stein admits that there was a demand for cash and that he telephoned plaintiff to arrange with the Little Falls Bank to cash the draft. The hides were not shipped, and, on January 27, the draft was returned to plaintiff, with a notice that defendant would not be bound by the sale, because the full purchase price was not tendered in cash within the time set for the delivery of the hides.

The answer admitted the contract of sale set forth in the complaint, but alleged its breach by plaintiff in failing to tender the price within the stipulated time. The reply alleged that payment was to be made by draft as in former similar transactions between the parties and in accordance with the custom of the trade, and that "it is the custom of the trade in which both plaintiff and defendant are engaged and of which both had notice, to pay for merchandise sold under this and similar contracts by draft."

The jury were instructed that a recovery could be had for failure to deliver, if they found that defendant accepted the draft in payment of the hides. No such issue was tendered by the pleadings, but evidence directed thereto was offered by both sides, was received without objection, and no fault was found with its submission to the jury. Hence, if it could be ascertained that the jury solved this issue in favor of plaintiff,

the verdict should stand. But that cannot be done, for the court also left to the jury two other issues, either of which determined in plaintiff's favor would also entitle him to a verdict. If either of the two issues thus submitted do not warrant such a verdict, there must be a new trial.

In regard to the two issues referred to the charge was: "If you find that by previous dealings there had been established a course of dealings between the parties whereby the defendant had previously accepted the draft of the plaintiff in payment for purchases made, or if you find that there is a custom of the hide business, in this locality, of which both parties had notice so as to bind them, that payment for the purchase of hides by hide dealers is made by draft and not by cash, then it was the duty of defendant to accept plaintiff's draft on January 24th." Error is assigned upon this instruction.

It is well settled that, where a contract for the sale of goods is silent as to the manner of the purchase price, payment in money or legal tender must be made or offered before delivery of the goods can be demanded. And section 42, c. 465, p. 779, Laws 1917 (Uniform Sales Act), provides: "Unless otherwise agreed delivery of the goods and payment of the price are concurrent conditions." Payment of the price was here necessary before the seller could be placed in default, for there is no contention that the sale was on credit. Nor is there any claim that there was a tender of the purchase price in money. Unless the draft drawn upon plaintiff by his agent Stein was either accepted in payment, or unless a provision may be incorporated into the contract of sale that such draft should be accepted in payment because of the evidence received of prior use of drafts in the deals between the parties or because of the usage or custom of the trade testified to, defendant must be conceded the right to have the balance of the purchase price in cash before he could be required to deliver the hides. It would seem entirely clear that the fact that defendant had, in prior deals with plaintiff, accepted such drafts, cannot inject into all subsequent contracts of sale an agreement to accept drafts in lieu of money, unless some new principle of contracts is furnished by section 71, p. 790, of chapter 465, which provides:

"Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by

custom, if the custom be such as to bind both parties to the contract or the sale."

We do not think this section adds or was intended to add anything new to sales contracts, but is rather in recognition of existing contract law. The duty or liability to pay the price for goods purchased can hardly be said to arise by implication, for it is the essence of every sale. The same is the fact that the purchaser is entitled to the stipulated price in money or in legal tender.

We think neither previous dealings nor the custom testified to should be held to import into a sales contract an obligation on the seller to accept an order or draft drawn by the buyer's agent upon the buyer as payment. As long as the seller has possession of the goods, he has a seller's lien thereon and may retain possession until the price is paid or tendered in money. It is true that it has been held that, where a general well established custom prevails in a trade, contracts pertaining to such trade are made with reference to such custom. Paine v. Smith, 33 Minn. 495, 24 N. W. 305; McDonald v. Union Hay Co. 143 Minn. 40, 172 N. W. 891. But such custom or "usage cannot be allowed to subvert a well-settled rule of law." Globe Milling Co. v. Minneapolis Ele. Co. 44 Minn. 153, 46 N. W. 306. "Custom will not be allowed to vary or contradict the plain expressed terms of a contract, or to imply from these terms an obligation different from what the law would imply, or to imply an obligation in the absence of any contract on the subject." E. L. Welch Co. v. Lahart Ele. Co. 122 Minn. 432, 142 N. W. 828. In Southwestern Freight & Cotton Press Co. v. Stanard, 44 Mo. 71, 100 Am. Rep. 255, the court said: "But evidence of custom, however, is never admissible to oppose or alter a general principle or rule, so as to make the rights and liabilities of parties other than they are at law."

Nor will evidence of an unreasonable usage or custom be permitted to inject an obligation into a contract. Byrd v. Beall, 150 Ala. 122, 43 South. 749, 124 Am. St. 60. And it might well be held that a custom which requires the delivery of goods sold upon the mere receipt of an order or draft, like the one in this case, is unreasonable and contrary to the well settled rule of law which assures to the seller the price in money and gives him a lien upon the goods therefor, and possession to enforce it. Many things may happen between the making of a contract for the

sale of goods and the time set for payment and delivery, such as insolvency of the buyer or disputes which might culminate in a lawsuit which the seller might be forced to bring in a foreign jurisdiction, if he be denied his right to payment in money concurrent with delivery.

The custom proven should hardly amount to more than this: In transactions between dealers the convenience of the buyer, and perhaps the seller also, is usually served by using the buyer's checks or drafts drawn on him by his agent to settle for purchases, but, although so used, both parties understand that the check or draft is accepted from choice in the particular case and not from an obligation of the contract, and only as conditional payment. Nearly all large transactions between dealers of good repute are by checks or drafts. The risk of carrying large sums of money to pay for goods purchased in businesses carried on in the manner which plaintiff was doing is so apparent that no one attempts it. But, notwithstanding this manner of using checks or drafts, it should be, and, we think, it is well understood, that a seller is free to insist on cash, when to him it seems best to have it, unless there is a specific agreement in the contract to accept something else in lieu thereof. It might well be that the course of dealing or this custom might avail to avoid a default or forfeiture. That is, when defendant refused the draft, their previous dealings or the custom to settle with drafts might have given plaintiff a reasonable time to produce and tender the balance of the purchase price in money. But that question is not involved and is not decided, for there was no tender of money at any time.

Our conclusion is that there should be a new trial.

Order reversed.