## TRANSCONTINENTAL OIL COMPANY v. FEDERAL RESERVE BANK OF MINNEAPOLIS.[1]

July 1, 1927.

No. 26,054.

**Federal Reserve Bank of Minneapolis not negligent in sending checks for collection direct to payer bank.**

Defendant received from the First National Bank of Chicago, a member bank of the Federal Reserve Bank of that city, two cashier's checks issued by a bank of South Dakota, a member bank of defendant. The checks bore the unrestricted indorsement of plaintiff, the payee. Under the arrangement existing between the Chicago banks and defendant, as expressed in regulation J, series of 1917 of the federal reserve board, and defendant's circular No. 193, defendant accepted the collection of the checks upon the terms that it might forward the same to the payer bank with instruction to remit by draft upon a Minneapolis bank. The statute of South Dakota authorized the collecting bank, doing business in that state, to send the checks direct to the payer bank. And the court found an established general banking custom, existing in Minnesota and South Dakota, to forward items for collection direct to payer bank with instructions to remit by draft. It is *held*:

[1] Defendant was not guilty of negligence in sending the checks direct to the payer bank.

[2] Nor in instructing the payer bank to remit by draft on bank in Minneapolis.

Banks and Banking, 7 C. J. p. 613 n. 32; p. 620 n. 10; p. 623 n. 48.
Customs and Usages, 17 C. J. p. 471 n. 70.

See note in 30 A. L. R. 647; 31 A. L. R. 1269.

Plaintiff appealed from an order of the district court for Hennepin county, Dickinson, J., denying its motion for a new trial. Affirmed.

*Rockwood & Mitchell,* for appellant.

*Ueland & Ueland,* for respondent.

[1]Reported in 214 N. W. 918.

HOLT, J.

Appeal from an order denying plaintiff's motion for a new trial.

The action is one to recover damages of defendant, the Federal Reserve Bank of the ninth reserve district, located at Minneapolis, this state, for negligence in the collection of two cashier's checks, issued by the First National Bank of Eureka, South Dakota, both dated August 2, 1920, payable to plaintiff and transmitted to its office in Chicago, Illinois. The aggregate amount of the checks was $2,670.35. Plaintiff indorsed them by unrestricted indorsement and deposited the same on August 5, 1920, in the First National Bank of Chicago, the amount being credited to plaintiff's checking account and entered on its pass book, which contained a provision that the bank in so receiving such checks acted only for plaintiff as agent to collect the same and assumed no responsibility beyond care in selecting agents at other points to whom to forward such checks. The Chicago bank was a member bank of the Federal Reserve Bank of Chicago, and the Eureka bank was a member bank of defendant at this time. The general supervision and control of the federal reserve banks is lodged in the federal reserve board. (U. S. Comp. St. 1916, §§ 9785-9805.) This board promulgated regulation J, series of 1917, which governed the reserve banks in 1920, and contained these provisions:

"(9) In handling items for member banks, a Federal Reserve Bank will act as agent only. The Board will require that each member * * * bank authorize its Federal Reserve Bank to send checks for collection to banks on which checks are drawn, and, except for negligence, such Federal Reserve Bank will assume no liability. Any further requirements that the Board may deem necessary will be set forth by the Federal Reserve Banks in their letters of instructions to their member * * * banks. Each Federal Reserve Bank will also promulgate rules and regulations governing the details of its operations as a clearing house, such rules and regulations to be binding on all member * * * banks which are clearing through the Federal Reserve Bank."

Pursuant to authority thus given defendant issued check clearing and collection circular No. 193, which was in force during August, 1920, and which had prior to that month been received by the First National Bank of Chicago and the Federal Reserve Bank of Chicago, the here material part reading:

"2. Checks received by the Federal Reserve Bank drawn on its member banks will be forwarded direct to such member banks and are to be remitted for by the member banks on day of receipt if possible, by their draft on the Federal Reserve Bank provided they have a balance in excess of their required reserve, or by their draft on a bank in Minneapolis or St. Paul. Member banks are required by the Federal Reserve Bank to provide funds to cover at par all checks received from, or for account of, their Federal Reserve Bank."

"6. In handling items for member banks, the Federal Reserve Bank of Minneapolis acts as agent only. It is understood that each member bank authorizes it to send checks for collection direct to banks on which checks are drawn, and except for negligence the Federal Reserve Bank of Minneapolis assumes no liability until funds are actually in its hands, and is authorized to charge back any item for which it has not received final payment, including items lost in transit."

Member banks of the federal reserve banks send their items for clearance and collections to the reserve bank of which they are members; but to save time and work there existed an arrangement, in August, 1920, between the First National Bank of Chicago, the Federal Reserve Bank of Chicago, and the defendant whereby the former might send direct to defendant for collection items upon banks within its district, the proceeds of such items so routed being credited by defendant to the Federal Reserve Bank of Chicago, it being agreed by and between all these banks that their rights and liabilities should in all respects be the same as if items so routed had been first deposited by the First National Bank of Chicago with the Federal Reserve Bank there and by the latter deposited for collection with defendant. The two cashier's checks

were under this arrangement sent directly to defendant by the First National Bank of Chicago and were received by defendant on August 6 and 7, respectively, and immediately forwarded with other similar items, totaling $8,277.30, direct to the Eureka bank with instructions to remit for the same by draft on a Minneapolis or St. Paul bank. On August 10 the Eureka bank attempted to remit to defendant for said checks and the other items by drawing its draft in the sum of $8,277.30 upon the First & Security National Bank of Minneapolis, which draft was received by defendant either after banking hours on the 11th or early on the 12th of August, and on that day presented to the First & Security National Bank for payment, but payment was refused for lack of funds to the credit of the Eureka bank. On August 11 the Eureka bank suspended payment and a receiver was appointed for said bank by the comptroller of currency. The draft has never been paid.

The court found that if the checks had been presented separately over the counter to the Eureka bank at any time between the 7th and 11th of August there would have been sufficient money on hand to pay them, but not enough to have paid all the items forwarded at the one time stated. The trial court also found the existence during August, 1920, of an established, general, uniform and certain usage and custom among banking institutions in Minnesota and South Dakota in accordance with which defendant was authorized to send the checks direct to the Eureka bank and to direct that bank to remit by its draft upon a bank in Minneapolis or St. Paul. Neither this established custom, nor the arrangements between the Chicago banks and defendant, nor the contents of regulation J, series of 1917, nor of defendant's clearing and collection circular No. 193 were known to plaintiff. There was another bank at Eureka besides the one here involved. The American Railway Express Company also maintained an office at Eureka with an agent authorized to collect money on checks and drafts on banks there and remit the same for a consideration. A statute of South Dakota was in force in 1920 reading:

"Any bank, banker or trust company, hereinafter called bank, organized under the laws of, or doing business in, this state, receiving for collection, or deposit, any check, draft, note or other negotiable instrument drawn upon or payable at any other bank located in another city or town whether within or without this state, may forward such instrument for collection directly to the bank on which it is drawn or at which it is made payable, and such method of forwarding direct to the payer shall be deemed due diligence, and the failure of such payer bank, because of its insolvency or other default, to account for the proceeds thereof, shall not render the forwarding bank liable therefor, provided, however, that such forwarding bank shall have used due diligence in other respects in connection with the collection of such instrument." [Supp. Comp. L. N. D. 1913-1925, § 6954a1.]

Because of the agreement between plaintiff and the First National Bank of Chicago, stated in plaintiff's pass book, that bank was merely the agent to select a subagent for the collection of the checks, so that the New York rule will not shield defendant from accountability to plaintiff. We then come to the proposition whether the facts found show actionable negligence. Plaintiff claims negligence in two respects only: First, in forwarding the checks direct to the payer bank; and second, in authorizing that bank to remit by draft on a Minneapolis or St. Paul bank instead of by cash.

It is contended that the South Dakota statute has no application to the first proposition because defendant is not a bank in that state. But South Dakota is a part of the reserve district in which by act of congress defendant is required to and does do business. The checks in question were there drawn and payable. And it seems to us that plaintiff cannot be heard to say that handling the collection of checks so issued and payable in that state, in accordance with provisions of its statute, is negligence. Farmers & Mer. Bank v. Federal Res. Bank, 262 U. S. 649, 43 S. Ct. 651, 67 L. ed. 1157, 30 A. L. R. 635, cited by plaintiff, holds that this provision

of the statute is applicable.  Of course, if there were allegation and proof that defendant knew of the failing condition of the bank it might be negligence to do what the law permits, namely, send the checks direct to the payer bank.  But there is no claim of that sort. The claim is simply that the sole circumstance that the checks were forwarded to the payer bank establishes negligence.  But aside from the statute and the established custom of banking, we think the contract of employment of defendant absolves it from liability on the facts found both as to the sending and the authorization to remit by draft.

Defendant was employed by plaintiff's authorized agent, the First National Bank of Chicago, to collect the checks.  Such agent knew that the only terms and conditions upon which defendant would accept such employment were those of regulation J, series of 1917, and the clearing and collection circular No. 193, and therefore must be held to have consented and agreed in behalf of plaintiff that not only the checks might be sent directly to the payer bank for collection, but also that such bank might remit to defendant by draft upon a bank in Minneapolis.  Defendant is not compelled by law to collect checks or drafts for its member banks or for member banks of other federal reserve banks.  It is authorized to render such service under terms and conditions established by the federal reserve board and by its own regulations communicated to banking institutions who see fit to request the service.  As expressed in Fergus County v. Federal Res. Bank, 75 Mont. 582, 592, 244 P. 883, it was settled in Farmers & Mer. Bank v. Federal Res. Bank, 262 U. S. 649, 43 S. Ct. 651, 67 L. ed. 1157, 30 A. L. R. 635, that defendant was not compelled by law to collect checks.  The Montana court there applied this quotation from 6 Cal. Jur. 117:

"It is a fundamental rule of law, however, that what one may refuse to do entirely he may agree to on such terms as he pleases. Hence, one person, being under no legal duty to perform certain services for another, may, upon agreeing to perform such services, exempt himself from liability for his own negligence, providing

\* \* \* there is no attempt to exempt himself from responsibility from any fraud or willful injury to the other person or his property, or to exempt himself from responsibility from any violation of the law, either willful or negligent."

We do not need to go to this extent in this case, for there is no attempt to exempt defendant from negligence. There is merely a proposition that if the collection of checks or drafts is intrusted to defendant it will be done by forwarding the same to the payer bank direct with authorization to remit by draft on a bank in Minneapolis or St. Paul. It only exempts itself from liability for the default of the payer bank. It is to be presumed that a going bank will honor its own checks and remit only with a good draft. There is no law which forbids a bank from making payment otherwise than by cash. In fact, we know that the banking business could not be conducted without extraordinary and needless expense to the public, or at all, perhaps, if in the collection and clearance of commercial paper only currency was to be used. Therefore it cannot be said that the conditions upon which defendant undertook the collection of these checks as expressed in regulation J and circular No. 193 permit negligence or exempt therefrom, but on the contrary prescribed that the established, general and customary banking method in use in the states of Minnesota and South Dakota as found by the court should be employed. It is true, that an act done in the customary manner may nevertheless be found negligently done, and that custom may not overrule a settled rule of law. Minneapolis S. & D. Co. v. Metropolitan Bank, 76 Minn. 136, 78 N. W. 980, 44 L. R. A. 504, 77 A. S. R. 609; Stein v. Shapiro, 145 Minn. 60, 176 N. W. 54, 8 A. L. R. 1264. But it must also be recognized that when in the commercial and banking business there has grown up an established, general, uniform, and certain usage and custom to send checks direct to a distant payer bank with authorization to remit by draft, a bank acting as a collection agent ought not to be held to have been negligent in following that general custom, especially where, as here, in consenting to act as such

collection agent it was done upon the express condition that performance of the services and responsibilities therefor were to be in accordance with regulation J and circular No. 193. Of course, as already said, if plaintiff had alleged and proved that defendant had knowledge of some risk in pursuing the ordinary course or the course agreed upon in attempting to make the collection, proper care might have required a deviation therefrom. But nothing of that sort is charged against defendant.

Plaintiff confidently relies on Federal Res. Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. ed. 617, 31 A. L. R. 1261. As we read that case it accepts the trial court's conclusion that the reserve board's regulation similar to regulation J, series of 1917, herein authorized defendant to send the checks direct to the payer bank so that no negligence may be claimed on that score. This is made very clear in the decision of the trial court, Malloy v. Federal Res. Bank (D. C.) 281 F. 997. As to the second point, that it was negligence to authorize remittance other than in money, the decision recognizes "that the obligation which the law imposes to collect only in money may be varied by a regulation, clearly and positively so providing, although, in terms, it relates only to the banks *inter se,* upon the ground that the owner of the check is bound by the knowledge and consent of his subagent." But under the regulation there involved, similar to regulation J here, it was held that authority to pay by draft was not to be implied from the mere authority to forward the check to the payer bank direct, and that the custom there proved was equivocal, since remittance could be "by means of its exchange draft or by a shipment of currency." It is true, the Supreme Court in the quotation above made from the Malloy decision assumed the principle stated therein to be the law merely for that decision. But why should it not be good law generally? Here defendant receives in the usual course of business checks for collection from a bank. The checks bear the unrestricted indorsement of the payee. There is nothing to advise defendant of the terms contained in the pass book of the payee to the effect that the bank is merely the agent of the payee to select a subagent to make

collection. Why should not defendant have the right to consider the bank the owner of the checks and hence hold it to the terms of circular No. 193; or else consider that the bank has authority from the owner to employ defendant to collect such checks upon such terms and conditions as defendant is willing to undertake the service; or, if you please, upon the terms and conditions imposed by the established, certain and uniform banking custom and usage in the states where the service is to be rendered? In this case the circular No. 193 is the same as the banking custom on the proposition in question. It appeals to us that the principle of law assumed to exist by Mr. Justice Sutherland in the Malloy opinion is sound and leads to an affirmance. The First National Bank knew the terms upon which defendant would undertake the collection when the checks were forwarded to it. Defendant followed those terms to the letter. When an agent pursues the method agreed upon for the discharge of his duties as agent, the principal in all justice should not be permitted to say that the agent was negligent.

The case of Hommerberg v. State Bank of Slayton, 170 Minn. 15, 212 N. W. 16, does not help appellant. Neither an agreement nor a banking custom was found to excuse the acceptance of a worthless draft from the payer bank. On the contrary, that decision recognizes that by agreement an agent for collection of checks may limit the responsibility established rules of law place upon him. And the authorities seem to agree that such rules may be limited or varied by agreement. Semingson v. Stock Yards Nat. Bank, 162 Minn. 424, 203 N. W. 412; Farmers State Bank v. Union Nat. Bank, 42 N. D. 449, 173 N. W. 789; Closter Nat. Bank v. Federal Res. Bank (C. C. A.) 285 F. 138 (certiorari denied, 261 U. S. 613, 43 S. Ct. 359, 67 L. ed. 827). An agreement that the collection of commercial paper may be made in a certain manner must be held to be as effective a shield to the charge of negligence as an instruction how to proceed. The latter freed from the charge of neglience a bank which received a check from a subagent bank with instruc-

tion to send the same for collection direct to the payer bank. First Nat. Bank v. Citizens Sav. Bank, 123 Mich. 336, 82 N. W. 66, 48 L. R. A. 583, and the same check involved in First Nat. Bank v. Bank of Whittier, 221 Ill. 319, 77 N. E. 563, 5 Ann. Cas. 653. If the established rule that it is negligence to send an item to the payer bank direct may be abrogated by directions or instructions to the forwarding bank, it should follow that likewise may the rule that the remittance must be in currency.

The rules of law invoked in this case seem to be slipping away from the established custom and usage of present day banking, Spokane Valley State Bank v. Lutes, 133 Wash. 66, 233 P. 308. So we find that the legislatures of different states have seen fit by statute to effect a change. By L. 1927, p. 214, c. 138, both rules were rendered ineffective to establish negligence in this state.

Other grounds are urged by respondent for an affirmance which we need not consider in view of the conclusion stated. Such grounds among others are: No damages resulted, since the Eureka bank was not in condition to remit for all the items forwarded at the same time that plaintiff's were, and since the only one liable on the checks is now liable on the draft nothing was lost to plaintiff by the substitution of the latter for the former. It is also claimed by respondent that the Eureka bank became a collecting bank for plaintiff when it received the checks and issued the draft; that plaintiff stands in the shoes of one or the other of the Chicago banks; that plaintiff's unrestricted indorsement gave defendant the right to consider the First National Bank of Chicago the owner of the checks; and that the remittance draft sent by the Eureka bank was never accepted by defendant and was not one which it authorized to be sent.

We think the findings of fact as to the agreement under which defendant accepted the collection of these checks as well as the established general banking custom in the states of Minnesota and South Dakota are sustained by the evidence, and these findings justify the conclusion that no negligence was proved without aid of the other grounds advanced by respondent.

The order is affirmed.