## Webber v. Federal Reserve Bank of Philadelphia.

*Abraham Levin*, for plaintiff.
*Williams, Brittain & Sinclair*, for defendant.

LEWIS, J., November 17, 1931.—The plaintiff, holder of a check for $500, payable to his order, and drawn on the Darby Bank and Trust Company, of Darby, Pennsylvania, endorsed it in blank, on January 5, 1931, and deposited it to his account with The Pennsylvania Company for Insurances on Lives and Granting Annuities. That company credited plaintiff's account conditionally with the amount of the check and forwarded the same to the Federal Reserve

Bank of Philadelphia, the defendant, for collection. The defendant bank promptly sent the check, together with other items, to the drawee, Darby Bank and Trust Company, for payment. It received from that bank, in payment of the several items, a draft on the Philadelphia National Bank, the Darby Bank and Trust Company at the same time marking plaintiff's check "paid," and charging the account of the drawer on its books with the amount of the check. Before defendant presented the drawee bank's remittance draft to the Philadelphia National Bank the drawee bank closed its doors and possession of its business and assets was taken over by the Secretary of Banking of the Commonwealth of Pennsylvania. Payment of the remittance draft was thereupon stopped, the defendant advised The Pennsylvania Company of that fact, and the latter company in turn notified the plaintiff of its inability to collect the check, and charged back the plaintiff's account on its books for the amount thereof. The plaintiff thereupon instituted this action of assumpsit against the defendant for the amount of the uncollected check, alleging, in substance, that in collecting the plaintiff's check the defendant was negligent in accepting payment therefor of the remittance draft of the drawee bank instead of cash. We now have before us this rule for judgment for want of a sufficient affidavit of defense for the purpose of testing the various defenses set up by the defendant bank.

These defenses may be summarized under three headings:

1. That by the terms of the depositor's agreement defendant is absolved from responsibility because of the acceptance by it of something other than cash in payment of an item.

2. That there is a custom of collecting banks, which custom is certain, uniform and reasonable, and justifies the acceptance by defendant of something in lieu of money, and, therefore, relieves the defendant from liability.

3. That the acceptance by the defendant federal reserve bank of an exchange draft in payment of a check, which it holds for collection, does not constitute negligence in view of the authority given it in regulation J (Series of 1930) of the Federal Reserve Board, and circular No. 477, issued by the Federal Reserve Bank of Philadelphia (September 2, 1930).

The principal and controlling question raised by the pleadings may be stated as follows: Is a federal reserve bank, in collecting checks endorsed and transmitted to it by a member bank, negligent when it accepts a draft, instead of cash, for the items transmitted to it for collection?

The general rule in Pennsylvania is that, apart from custom or agency or special authority, a bank in the collection of commercial paper has no right to accept in payment thereof anything except money. See an exhaustive note in 61 A. L. R. 739, and the Pennsylvania cases cited on page 742 of the note; Brady on Bank Checks (2nd ed.) p. 456, § 282.

The Supreme Court of the United States, in 1924, decided the case of Federal Reserve Bank of Richmond v. Malloy, 264 U. S. 160, which created considerable discussion and concern in banking circles because of the ruling therein announced. It was there held that if the bank responsible to the payee for the collection of a check surrenders the check to the drawee bank and accepts in payment an exchange draft of that bank which proves worthless, the collecting bank is liable to the payee of the check for the resulting loss.

The regulations of the Federal Reserve Board authorize federal reserve banks in handling checks forwarded to them for collection to send them direct to the banks on which they are drawn. The Malloy case, *supra*, held that such a regulation could not be enlarged by implication to include authority to accept a draft of the drawee of a check in payment. To counteract the

effect of this decision, regulation J, Series of 1930, was promulgated (superseding Series of 1924), and circular No. 477 issued by the Federal Reserve Bank of Philadelphia (September 2, 1930), which regulation and circular declare that every bank sending checks to the reserve bank will be understood to have agreed to the terms and conditions therein stated, authorizing the reserve bank to receive payment in cash or bank drafts for the collection items.

We think that these regulations are valid, and persons dealing with member banks of the federal reserve system are chargeable with knowledge of their existence: Louisville & Nashville R. R. Co. *v.* Nashville Branch of the Federal Reserve Bank of Atlanta, 157 Tenn. 497; Transcontinental Oil Co. *v.* Federal Reserve Bank of Minnesota, 172 Minn. 58.

Bank of Wesleyville *v.* Rose, 85 Pa. Superior Ct. 52, relied upon in support of plaintiff's contention, is not controlling, in view of the amendatory and supplementary regulations of the federal reserve bank promulgated since that case was decided. Moreover, in the present case the affidavit of defense avers knowledge of the federal reserve regulations on the part of the plaintiff depositor, limiting liability by the defendant. See articles: "Some Aspects of Regulations of Federal Reserve Board and State Statutes Authorizing Forwarding of Checks for Collection Direct to Drawee Bank and Acceptance of Drafts in Payment," 4 Wash. Law Rev. 39; "Liability of Collecting Bank for Accepting Draft as Payment for Commercial Paper," 41 Harv. Law Rev. 249.

An illuminating statement upon this subject will be found in the opinion of that eminent scholar and jurist, Cardozo, C. J., in Carson *v.* Federal Reserve Bank, 254 N. Y. 218, where he states: "By the Federal Reserve Act, as first enacted in 1913, a reserve bank was authorized to collect only those checks which were drawn on member banks and which were deposited by a member bank or another reserve bank or the United States. Farmers' & Merchants' Bank of Monroe, N. C., *v.* Fed. Reserve Bank of Richmond, Va., 262 U. S. 649, 654. . . . Even then, however, the regulations of the Board provided: 'In handling items for member banks, a Federal reserve bank will act as agent only.' . . . The statute was amended in September, 1916, (Section 13 [39 Stat. 752] ) so as to authorize a reserve bank to receive for collection from any member checks drawn on nonmember banks located in the district. The Board renewed its order that the relation should be one of agency. . . . In 1917 the statute was again amended, this time by a provision that 'solely for the purposes of exchange or of collection,' a reserve bank may receive from a nonmember bank or trust company the checks payable upon presentation, upon condition that such nonmember bank or trust company maintain an adequate balance with the reserve bank of its district. Act Cong. June 21, 1917, c. 32, § 4. . . . Collections were thus permissible both for members and for nonmembers."

The following statement of the Supreme Court of Minnesota in Transcontinental Oil Co. *v.* Federal Reserve Bank of Minneapolis, *supra*, is significant:

"Defendant was employed by the plaintiff's authorized agent, the First National Bank of Chicago, to collect the checks. Such agent knew that the only terms and conditions upon which defendant would accept such employment were those of regulations J, series of 1917, and clearing and collection circular No. 193, and therefore must be held to have consented and agreed in behalf of plaintiff that not only the checks might be sent directly to the payer bank for collection, but also that such bank might remit to defendant by draft upon a bank in Minneapolis. Defendant is not compelled by law to collect checks or drafts for its member banks or for member banks of other federal

reserve banks. It is authorized to render such service under terms and conditions established by the federal reserve board and by its own regulations communicated to banking institutions who see fit to request the service."

Adopting and employing the language of Judge Cardozo in the Carson case, *supra*, as applicable to the present controversy, we repeat: "In the setting of this statute, Regulation J (Series 1930) was adopted by the board and is now to be construed. It recites (in terms substantially the same as those of earlier regulations) that the board, 'desiring to afford, both to the public and to the various banks of the country, a direct, expeditious and economical system of check collection and settlement of balances has arranged to have each federal reserve bank exercise the functions of a clearing house and collect checks for such of its member banks as desire to avail themselves of its privileges,' to which is added a recital that like privileges will be accorded to nonmember banks and trust companies qualifying in certain ways. It then proceeds to a statement of the terms and conditions on which business may be done. 'The Federal Reserve Board hereby authorizes the federal reserve banks to handle such checks subject to the following terms and conditions, and each member and nonmember clearing bank which sends checks to any federal reserve bank shall by such action be deemed (a) To authorize all federal reserve banks to handle such checks subject to the following terms and conditions; (b) To warrant its own authority to give a federal bank such authority, and (c) To agree to indemnify any federal reserve bank for any loss resulting from the failure of such sending bank to have such authority.' Among the terms and conditions thus prescribed are these: 'A federal reserve bank will act only as agent of the bank from which it receives such checks. A federal reserve bank may present such checks for payment or send such checks for collection direct to the bank on which they are drawn,' or forward them 'to another agent.' 'A federal reserve bank may . . . at its option either directly or through an agent, accept . . . bank drafts . . . in lieu of cash, without being liable for any loss thereby resulting.' 'The amount of any check, for which payment, not actual and finally collected funds, is not received, shall be charged back to the forwarding bank regardless of whether or not the check itself can be returned.' Finally, each federal reserve bank may promulgate its own regulations not inconsistent with law or with the regulations of the board, and such regulations shall be binding upon member or nonmember banks availing of its privileges. Pursuant to the authority thus conferred, the defendant made its own regulations (circular No. 477, September 2, 1930), reaffirming the regulations adopted by the board and supplementing them by others. . . . The regulations of the board, reënforced by the defendant's circular, and assented to by the transmitting bank, are equivalent to an express agreement that as between the defendant and the other banks the relation engendered by the receipt of uncollected paper shall be an agency and nothing more."

The effect of the regulation was the same as though its provisions had been written on the face of the check, and, therefore, when the maker thereof did not specify cash payment, he agreed, as did the payee, that if the check were presented by or through a federal reserve bank the check might be payable by an exchange draft drawn by the payee bank on its reserve deposit. See 46 Banking L. J. 865; Transcontinental Oil Co. *v.* Federal Reserve Bank of Minnesota, *supra*.

The tremendous modern expansion of credit banking has disclosed the inadequacy of the rules of the common law affecting banks and collection. A striking recognition of this situation is found in the Bank Collection Act of 1931 (Act of June 12, 1931, P. L. 568), which allows the collecting bank to

send the item directly to the payer bank and accept a draft or credit in payment.

The provisions of that act are not retroactive, and, hence, not applicable to the present case.

We are of the opinion and so hold that the acceptance by a federal reserve bank of an exchange draft in payment of a check drawn on a state bank and which it holds for collection does not constitute negligence. It will, therefore, be unnecessary for us to pass upon the other points made by the defendant in its affidavit of defense and under the heading of new matter. See Brady on Bank Checks, p. 458, § 283, 1929 Supplement p. 150, § 283, and cases cited.

Another problem has confronted the court, that is, whether an affidavit of defense is required in an action of assumpsit which is essentially *ex delicto*. In view of the fact that this matter has not been called to the attention of the court in the arguments so ably made by counsel representing both parties, the court deems it sufficient to simply refer to the following authorities: Corry *v*. Penna. R. R. Co., 194 Pa. 516; Parry *v*. First National Bank of Lansford, 270 Pa. 556; Smith's Pennsylvania Practice Act, page 267; Wilson *v*. Adams Express Co., 72 Pa. Superior Ct. 384, 387; Amram's Pennsylvania Practice Act of 1915, page 212; Stewart *v*. First Mortgage Guarantee and Trust Co., 24 Dist. R. 927; Marcus *v*. Bank, 12 Lackawanna, 266; Southern Steamship Co. *v*. Hull, 46 Pa. Superior Ct. 299; Cowan *v*. Nagel, 89 Pa. Superior Ct. 122; Coyle *v*. Schrull, 49 Pa. Superior Ct. 386; and the authorities are generally to the effect that where the cause of action is of a mixed character containing elements of contract and of tort an affidavit of defense is not required, although the action is in assumpsit. The actions of assumpsit for which judgment may be taken for want of an affidavit of defense are limited to such as are on contract alone, and do not include cases in which the cause of action is *ex delicto*.

The rule for judgment must be discharged.