## BALLEN & FRIEDMAN v. BANK OF KREMLIN.

No. 2550.   Opinion Filed February 18, 1913.

(130 Pac. 539.)

**BANKS AND BANKING—Checks—Liability of Bank to Holder.** Under section 132 of the Act of March 20, 1909 (Sess. Laws 1909, c. 24), known as the Negotiable Instruments Law, which requires an acceptance of a bill of exchange to be in writing, and section 185 of said act, which provides that checks are governed by the provisions of the act with reference to bills of exchange with certain exceptions, and section 189 of said act, which provides that a check does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check, no liability is created against the bank by the oral statement of one of its officers that a check drawn on it is good, made to a person who is about to purchase the check.

(Syllabus by Rosser, C.)

*Error from Superior Court, Garfield County;*
*Dan Huett, Judge.*

Action by Ballen & Friedman against the Bank of Kremlin. From a judgment sustaining a demurrer to the petition, plaintiffs bring error. Affirmed.

*A. J. Jones,* for plaintiffs in error.
*Garber & Kruse,* for defendant in error.

Opinion by ROSSER, C.   This was an action by Mike Ballen and Dave Friedman, a partnership composed of Ballen & Friedman, against the Bank of Kremlin. The trial court sustained a demurrer to the plaintiffs' petition, and they have appealed. The petition alleges, in substance, that the defendant is indebted to plaintiffs upon two checks dated July 16, 1910; that the checks were drawn by Frank Lowery, one payable to the order of George Reihm, and the other to the order of Joe Fleming; that on the 18th day of July, 1910, the checks were offered by their holder to plaintiffs as a cash item; that the plaintiff then and there, through the agency of the Security State

Bank of Enid, informed the defendant of the existence and presentation of said checks, and then and there inquired of the defendant as to their value; that the defendant, answering, said to plaintiffs' agent, the Security State Bank, "The checks are good;" that plaintiffs then accepted the checks and paid the face value of the same to the owners thereof; that they immediately presented the checks in the usual course of business; and that the defendant refused payment and protested them. The question presented is as to whether or not the petition alleges a cause of action.

This transaction occurred after the Act of March 20, 1909 (Sess. Laws 1909, c. 24), commonly called the Negotiable Instruments Law, had become the law in this state. Section 185 of that act is as follows:

"A check is a bill of exchange drawn on a bank on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

Section 132 of the act is as follows:·

"The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money."

It is contended by the plaintiffs that, as they were informed, by the defendant's cashier, that the check was good and acted upon that information, the bank is estopped to deny liability, and is responsible for the amount of the checks. As a general proposition of law, as applied to ordinary transactions, the plaintiffs are undoubtedly correct; but the question here is whether the ordinary principles of law in this regard apply to negotiable instruments, including bank checks. It is believed that they do not apply, at least in the absence of actual fraud, which is not alleged in this case. The Negotiable Instruments Law was intended to fix and settle the rights of the parties, so far as they are affected by its operation. *Columbian· Banking*

*Co. v. Bowen,* 134 Wis. 218, 114 N. W. 451. Section 132 of that law, quoted above, provides that the acceptance of a bill of exchange must be in writing. Section 185, quoted above, provides that checks shall be governed by the same rules as bills of exchange. Section 189 provides that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawee with the bank, and that the bank is not liable, unless and until it accepts or certifies the check. The oral statement that the checks were good was not a lawful acceptance, as required by the statute. Neither was it a certification, because a certificate means a declaration in writing, and a certificate must be in writing. The identical question involved here was before the Supreme Court of the state of Colorado in the case of *Van Buskirk v. State Bank,* 35 Colo. 142, 83 Pac. 778, 117 Am. St. Rep. 182. In that case the party receiving the check telephoned to the bank on which it was drawn and asked if the check was good, and was informed that the check was all right. The check was then cashed on the faith of this reply to the question. The drawer of the check within a few minutes, and before it was presented for payment, instructed the bank not to pay it; and the bank refused to pay it. The court held that the bank was not liable, and in doing so construed the identical sections of the Negotiable Instruments Law, which are quoted above.

In the case of *B. & O. R. Co. v. First National Bank,* 102 Va. 753, 47 S. E. 837, it was held under section 132 of the Negotiable Instruments Law of that state, which is identical with the same section in force in this state, that the acceptance of a check must be in writing, and that the drawee is not liable to the holder, unless and until it certifies such a check. The same construction was given to the same statute in *Seattle Shoe Co. v. Packard,* 43 Wash. 527, 86 Pac. 845, 117 Am. St. Rep. 1064.

In the case of *Lewis v. Greig,* 115 Ga. 127, 41 S. E. 497, the suit was brought on a bill of exchange. A colored man, desiring to purchase certain goods from the plaintiff, presented

the bill of exchange in payment, and the plaintiff, before deliver-
ing him the articles, went to the defendants' office and in-
quired whether the draft was good, and whether they would
accept it, and was told that the draft was good as gold, and
that they would accept it and it would be paid. The Georgia
Code required an acceptance to be in writing. The court held
that the defendants were not liable. In the course of the opin-
ion the court said:

"There is no intimation in the petition that Greig, Jones &
Wood agreed to accept the draft if the plaintiff would sell the
goods to Dixon; indeed, it does not appear that they even
knew that the plaintiff contemplated making such a sale. This
being true, how can the sale and the delivery of the goods by
the plaintiff to Dixon be such part performance as would render
it a fraud upon the part of Greig, Jones & Wood not to com-
ply with their parol acceptance? They were not parties to the
contract of sale; they knew nothing about such contract be-
tween the plaintiff and Dixon; and the fact that the plaintiff
complied with his part of the contract that he made with Dixon
surely cannot be said to be such part performance as would
render it a fraud for Greig, Jones & Wood to fail to comply
with their separate and distinct contract of parol acceptance
of the bill of exchange. Even though the plaintiff, in selling
the goods to Dixon, relied entirely upon the parol acceptance
of the bill by Greig, Jones & Wood, he was bound to know
the law and know that such an acceptance was absolutely void."

See, also, *Duncan v. Berlin,* 60 N. Y. 151; *Risley v. Phoe-
nix Bank of the State of New York,* 83 N. Y. 318 [38 Am.
Rep. 421]; *Anderson v. Jones* [102 Ala. 537] 14 South. 871;
*Upham v. Clute* [105 Mich. 350] 63 N. W. 317; *Izzo v. Luding-
ton* [79 App. Div. 272] 79 N. Y. Supp. 744; *Haeberle v.
O'Day,* 61 Mo. App. 390.

The equitable grounds under which plaintiffs claim seem to
be strong; but a consideration of all the facts show that, even
on equitable grounds, the bank is entitled to consideration. Sup-
pose that, when asked about the checks, the drawer had to his
credit in the bank an amount sufficient to pay them. The bank
would naturally answer that the checks were good. They were

good as the account then stood; and if other checks, sufficient to reduce the balance below the face of those in controversy, had not come in before they were presented, they would have been paid. If no other checks had been issued, the bank would have done the drawee a grave injustice if it had answered that the checks were not good. Then, after giving out the information, suppose other checks had been presented. Under section 189 of the Negotiable Instruments Law, the giving of the checks in suit did not operate as an assignment of any part of the drawer's fund. The bank could not refuse to pay other checks that were presented. The checks sued on had not been certified. The bank would have been liable to any person presenting a check, unless they paid it. It is clear that to require the bank to pay these checks would be to make it responsible for having told the checks were good, without any fraudulent intention, and at a time when its books showed they were good. The inquiry was made concerning the checks as such; and there is nothing in the petition to indicate that either the plaintiffs or the bank had in mind anything except the status of the drawer's account, and certainly no contract, equitable or otherwise, except as contained in the checks was contemplated by the parties.

The case of *First National Bank v. School District,* 31 Okla. 139, 120 Pac. 614, 39 L. R. A. (N. S.) 655, was decided on the statute in force in Oklahoma prior to the enactment of the Negotiable Instruments Law. In that case the school district gave one Bartsch a check on the bank. The next morning the district treasurer, acting for the district, instructed the vice president of the bank not to pay it. The check was left with the vice president by Bartsch the day it was drawn, and the vice president promised to give him credit for the amount. The bank paid the check to Bartsch and returned it to the school district as a voucher against its account.. The school district sued the bank to recover the money, and it was held that it was entitled to recover. It was held that the retention of the check by the bank, and the verbal promise to pay it, was not such an

acceptance as prevented the school district from countermanding payment. It was held, further, that the giving of the check did not operate as an assignment of the funds in the hands of the bank until it was presented for acceptance or payment.

The judgment should therefore be affirmed.

By the Court: It is so ordered.