MASSEY-HARRIS HARVESTER CO., RESPONDENT, v. FEDERAL RESERVE BANK OF KANSAS CITY, APPELLANT.—48 S. W. (2d) 158.

Kansas City Court of Appeals. February 1, 1932.

*Samuel Feller* for respondent.

*James E. Goodrich, H. G. Leedy, C. A. Leedy* and *O. A. Weede* for appellant.

TRIMBLE, P. J.—Plaintiff brought suit seeking damages for loss alleged to have been sustained through the act of the defendant in the matter of collecting a cashier's check for $3180 payable to plaintiff and issued by the First State Bank of Cunningham, Kansas. A jury was waived, and the cause was tried by the court, resulting in the court's finding in favor of the Union Avenue Bank of Commerce and against the plaintiff, and in favor of the plaintiff against the defendant, Federal Reserve Bank of Kansas City. From this judgment the said defendant Federal Reserve Bank has appealed.

The petition alleged, among other things, that on or about August 22, 1925, plaintiff was the owner of a collection account with the defendant, Union Avenue Bank of Commerce, and on said date plaintiff deposited with said bank for collection a cashier's check for $3180 issued by the First State Bank of Cunningham, Kansas, drawn on itself, dated August 21, 1925, and payable to plaintiff; that at the time of such deposit, plaintiff endorsed said check "Pay to the order of Union Avenue Bank of Commerce, Kansas City, Missouri;" that the amount of said check was thereupon credited to plaintiff's account; that on or about the 22nd day of August, 1925, the Union Avenue Bank endorsed and delivered said check to Commerce Trust Company for transmission through the Kansas City Clearing House and to be delivered to the defendant for collection; that on August 22, 1925, the Commerce Trust Company endorsed and delivered said cashier's check to the defendant Federal Reserve Bank of Kansas City, for collection; that on or about August 25, 1925, defendant endorsed said cashier's check on the back as follows: "Pay to the order of any bank or banker or trust company, prior endorsement guaranteed, August 25, 1925, Federal Reserve Bank of Kansas City," and— "thereupon carelessly and negligently forwarded the same direct to the First State Bank of Cunningham, Kansas, for collection and payment, upon receipt of which said bank stamped said check paid and issued its draft in payment therefor drawn on the Federal Trust Company of Kansas City, Missouri, and forwarded the same to the defendant Federal Reserve Bank of Kansas City, Missouri.

"That thereafter, and on or about August 30, 1925, the defendant Federal Reserve Bank of Kansas City carelessly and negligently accepted said draft from the First State Bank of Cunningham, Kansas, in payment of said cashier's check, said draft being in the sum of $8262.28 and included other items; that said draft on the Federal Trust Company was protested for non-payment, as this plaintiff is advised and informed, on or about August 31, 1925.

"That in the collection of said cashier's check the defendant Union Avenue Bank of Commerce, through its agent the Commerce Trust Company of Kansas City, appointed defendant Federal Reserve Bank of Kansas City as agent for the collection of said cashier's check; that said defendants had no authority from this plaintiff to send said check direct to the First State Bank of Cunningham for collection or to accept from the First State Bank of Cunningham, the drawer thereof, a draft on the Federal Trust Company of Kansas City or anything else except lawful money of the United States in payment thereof; that it was the duty of said defendants in collecting said cashier's check to receive and accept from the First State Bank of Cunningham, Kansas, only lawful money of the United States in payment thereof and in sending said cashier's check direct to said First State Bank of Cunningham for collection and in accepting said draft in payment thereof defendants acted in a careless and negligent manner and failed to use due diligence in the collection of said check. That said check was not returned to this plaintiff by the defendants.

"That on or about the 8th day of September, 1925, the First State Bank of Cunningham, Kansas, failed and the banking commissioner of Kansas took charge of said bank.

"That at all times from August 21, 1925, to September 3, 1925, said First State Bank of Cunningham, Kansas, had money and available cash items on hand sufficient to pay said cashier's check of $3180, and the defendants by the exercise of due diligence could have collected the same in cash.

"That on or about the 8th day of September, 1925, the defendant Union Avenue Bank of Commerce notified this plaintiff that said cashier's check had been dishonored and that the amount thereof had been charged back on this plaintiff's account.

"That on August 31, 1925, plaintiff demanded from the defendants the payment of said $3180.

"That by reason of the premises the plaintiff has been damaged in the sum of $3180.

"Wherefore, the plaintiff prays judgment, etc."

To this petition, the defendant offered a general demurrer, i. e., that "the petition does not state facts sufficient to constitute a cause of action." The demurrer being overruled, the defendant filed answer which, among other things, set up—

"2. This defendant admits and avers that upon or about August 25, 1925, it received from the Commerce Trust Company of Kansas City the check mentioned in plaintiff's petition, and that thereupon it forwarded the same to the First State Bank of Cunningham, Kansas, for collection and remittance; that on or about August 30, 1925, this defendant received from the said First State

Bank of Cunningham, Kansas, its draft for the sum of eight· thousand two hundred sixty-two dollars and twenty-eight cents ($8,262.28), drawn on the Federal Trust Company of Kansas City, which said draft was not paid by said Federal Trust Company and was protested for non-payment.

"3. This defendant denies each and every other allegation in said petition contained.

"4. For further answer defendant states that the nature and conduct of its business, and the extent of its powers and liabilities, are fixed, determined and limited by an Act of Congress, known as the Federal Reserve Act, and that its business is conducted under the control and supervision of the Federal Reserve Board, and that it operates under rules and regulations adopted by said Federal Reserve Board pursuant to authority vested in said Board by said Act of Congress, and under rules and regulations adopted by itself pursuant to authority vested in it by said Federal Reserve Act aforesaid, and the aforesaid rules and regulations of said Federal Reserve Board.

"5. That in receiving said check as aforesaid from said Commerce Trust Company of Kansas City, as alleged in plaintiff's petition, this defendant did so, and accepted said check as the agent of said Commerce Trust Company pursuant to the provisions of the aforesaid regulations of the Federal Reserve Board and its own rules and regulations; that in due course of business and without any negligence or default on its part, but in accordance with the aforesaid rules and regulations authorized by law, it promptly forwarded said cashier's check to the said First State Bank of Cunningham for collection and remittance; that said First State Bank of Cunningham thereupon became, and ever thereafter continued an agent to collect said check from itself and remit the proceeds thereof to this defendant, and if said First State Bank of Cunningham failed so to do, it was not due to the fault or negligence of this answering defendant, but to its own fault and negligence as an agent for collection and responsible for its own defaults and negligence.

"6. That pursuant to authority conferred on it by said Federal Reserve Act as aforesaid, said Federal Reserve Board on or about August 15, 1924, promulgated and made effective Regulation J, Series of 1924, which was in full force and effect at the times of the transactions and the happening of the events alleged in plaintiff's petition, the pertinent provisions of which said regulation are as follows, to-wit:

"'(1) A Federal reserve bank will act only as agent of the bank from which it receives such checks and will assume no lia-

bility except for its own negligence and its guaranty of prior indorsements.

" '(2) A Federal reserve bank may present such checks for payment or send such checks for collection direct to the bank on which they are drawn or at which they are payable, or in its discretion may forward them to another agent with authority to present them for payment or send them for collection direct to the bank ·on which they· are drawn or at˙ which they are payable.

" '(3) A Federal reserve bank may in its discretion and at its option, either directly or through an agent, accept either cash or bank drafts in payment or in remittance for such checks and shall not be held liable for any loss resulting from the acceptance of bank drafts in lieu of cash, nor for the failure of the drawee bank or any agent to remit for such checks, · nor for the non-payment of any bank draft accepted in payment or as a remittance from the drawee bank or any agent.

" '(4) Checks received by a Federal reserve bank on its member or non-member clearing banks will ordinarily be forwarded or presented direct to such banks, and such banks will be required to remit or pay therefor *at par* in cash or bank draft acceptable to the collecting Federal reserve bank, or at the option of such Federal reserve bank to authorize such Federal reserve bank to charge their reserve accounts or clearing accounts; provided, however, that any Federal reserve bank may reserve the right in its check collection circular to charge such items to the reserve account or clearing account of any such bank ·at any time when in any particular case the Federal reserve bank deems it necessary to do so.' ''

The further allegations in defendant's answer need not be stated, since they relate to matters of estoppel which are not referred to in the briefs and. hence need not be noticed.

Plaintiff's reply denied—

"all and singular the allegations contained in paragraphs 4, 5, 6, 7 and 8 of said answer and amendment, and further answering this plaintiff alleges that the allegations contained in said paragraphs of said answer and amendment do not set out facts sufficient to constitute any defense to plaintiff's cause of action."

At the trial a stipulation or an agreed statement of facts was introduced by plaintiff as follows:—

"It is hereby stipulated and agreed by and between the plaintiff and defendants that the following are facts in this case, but the introduction of the same or any part thereof shall be subject to such objections that may be offered that the same or any part thereof are not competent, relevant or material, and it is also understood that either party may introduce evidence to establish ad-

ditional facts in the case. This stipulation is not to be construed as including all the facts in the case:

"1. The plaintiff, Massey-Harris Harvester Company, is a corporation incorporated under the laws of New York with its principal place of business at Batavia in said State and a branch house in Kansas City, Missouri.

"2. The defendant Union Avenue Bank of Commerce is a banking corporation incorporated under the laws of Missouri with its place of business in Kansas City, Missouri.

"3. The defendant Federal Reserve Bank of Kansas City is a banking corporation organized and existing under the Act of Congress, known as Federal Reserve Act, with its principal place of business in Kansas City, Missouri.

"4. At the times hereinafter mentioned the plaintiff was the owner of an account with the defendant Union Avenue Bank of Commerce.

"5. That on or about the 22nd day of August, 1925, plaintiff deposited with said defendant Union Avenue Bank of Commerce for collection a certain cashier's check for $3180, issued by the First State Bank of Cunningham, Kansas, drawn on itself, dated August 21, 1925, and payable to the plaintiff, which check was in words and figures as follows:

" 'The First State Bank                83-1415                    No. 839
      " 'Cunningham, Kansas                                8-21-1925
Pay to Massey-Harris Harv. Co.                                $3180.00
      " 'Thirty-one Hundred Eighty Dollars
Cashier's check                            ·           H. D. DOTY, Cashier.'

"6. That at the time of the deposit of said cashier's check with said defendant Union Avenue Bank of Commerce plaintiff endorsed the same on the back thereof as follows, 'Pay to the order of Union Avenue Bank of Commerce, Kansas City, Missouri.

" 'MASSEY-HARRIS HARVESTER CO., INC.,

" 'JOHN HUGG, Manager,'

and at the time used a deposit slip which had printed thereon the following after the name of the depositor and date of deposit, 'Depositor by using this slip agrees: That all items may be handled under existing or future regulations of Kansas City Clearing House Association and/or Federal Reserve Bank of Kansas City; that items on this bank may be charged back on date or deposit and items returned; that items not on this bank received for collection or credit are at depositor's risk and not subject to check until actual payment therefor is received; that this bank as agent or owner is not liable for neglect, default or failure of banks selected as agents or subagents or for losses in transit; that should any item be not paid, or any bank fail to remit proceeds or issue paper

therefor which is dishonored, any credit given may be cancelled and this bank have no further duty as to such item or paper; that items on other banks in this city or Kansas City, Kansas, may be carried over for presentation through clearing house or otherwise on business day following date of deposit; and that items may be sent direct to banks on which drawn without waiving any of the above conditions.' That the defendant Federal Reserve Bank of Kansas City had no notice or knowledge of the aforesaid terms under which said cashier's check was so deposited with defendant Union Avenue Bank of Commerce and no notice that it was deposited for collection except such notice, if any, as may have been imparted by the endorsements on said check or said check itself.

"7. That the amount of said cashier's check on the date of deposit was credited to plaintiff's said account.

"8. That on or about the 22nd day of August, 1925, defendant Union Avenue Bank of Commerce endorsed said cashier's check on the back thereof as follows: 'Pay any bank or banker, previous endorsements guaranteed, August 22, 1925, Union Avenue Bank of Commerce, Kansas City, Missouri,' and deposited the same to its credit in the Commerce Trust Company of Kansas City, Missouri, for collection.

"9. The Commerce Trust Company on August 22, 1925, endorsed said cashier's check as follows: 'Pay any bank or banker or order, Commerce Trust Company, all previous endorsements guaranteed, August 22, 1925, Kansas City, Missouri, E. P. Wheat, Cashier, Cash Coll.,' and delivered the same to defendant Federal Reserve Bank of Kansas City, for collection.

"10. That on August 25, 1925, defendant Federal Reserve Bank of Kansas City endorsed said cashier's check as follows: 'Pay to the order of any bank, banker or trust company prior endorsements guaranteed, August 25, 1925, Federal Reserve Bank of Kansas City,' and thereupon it forwarded the same to the First State Bank of Cunningham, Kansas, for collection and remittance.

"11. That on receipt of said cashier's check said First State Bank of Cunningham, Kansas, and on August 28, 1925, stamped the same paid and issued its draft for eight thousand two hundred sixty-two dollars and twenty-eight cents ($8,262.28) drawn on Federal Trust Company of Kansas City, Missouri, which included the amount thereof and for other items and sent the same to defendant Federal Reserve Bank of Kansas City, which was received by said last-named defendant on or about August 31, 1925. That on or about said August 31, 1925, defendant Federal Reserve Bank of Kansas City presented said draft to Federal Trust Company and demanded payment, and payment thereof was refused by Federal

Trust Company and the same was protested for non-payment and the same has never been paid. The cashier's check was never returned by the defendants to the plaintiff.

"12. That the First State Bank of Cunningham, Kansas, continued to carry on its banking business in the usual and regular way until it failed on September 8, 1925, and the State Banking Commissioner took charge thereof and that plaintiff has received nothing on account of said cashier's check, except two dividends received from the receiver, viz.: March 2, 1928, nine hundred and fifty-four dollars ($954) and September 10, 1928, three hundred eighty-nine dollars and fifty-five cents ($389.55).

"13. That on or about August 1, 1924, the Federal Reserve Board pursuant to the aforesaid Federal Reserve Act, adopted and promulgated regulations known as 'Regulations Series 1924' a copy of which is hereto attached, marked Exhibit 'A,' and hereby made a part hereof with like effect as if all of the terms of the same were fully written out herein; that either party to this stipulation may, subject to objections as heretofore stated, read such portions of said regulations as they may determine and the portions so read before the court shall constitute the record of the contents of said regulations for purpose of the trial of this case without the remaining portions thereof being considered as a part of the testimony therein; that on or about July 21, 1924, the Federal Reserve Bank of Kansas City issued its 'General Letter D 1' as of that date, addressed to the member banks of district ten and headed 'Check Collection Operations,' which said letter was so issued with the consent and approval of the Federal Reserve Board and was mailed to the member banks of the Federal Reserve Bank of Kansas City including the Commerce Trust Company of Kansas City, from which the check in question was received by said Federal Reserve Bank, copy of which said general letter is hereto attached marked Exhibit 'B' and is hereby made a part hereof with like effect as if its terms were fully set out herewith.

"14. The following is a copy of the cash letter dated Aug. . . . 1925, from Federal Reserve Bank, transmitting said cashier's check to the First State Bank of Cunningham for collection, marked Exhibit 'C.'

"15. Trial by jury is hereby waived."

The evidence, as disclosed by the record, shows that from August 21, 1925, to September 23, 1925, the First State Bank of Cunningham, Kansas, had in cash, and due to it from other banks, a sum in excess of the amount of the draft which it sent· to the defendant about August 30, 1925, but did not at any of said times

have on deposit with the Federal Trust Company an amount sufficient to pay the draft.

The defendant's evidence was that when the cashier's check was dishonored the Commerce Trust Company immediately called the representative of the Union Avenue Bank of Commerce and advised him of the situation; that said representative looked into the matter, traced the item to plaintiff and immediately called plaintiff; that the form of deposit slip was the one regularly in use at said Union Avenue Bank of Commerce; that there was no agreement with customers except the recitations contained on the deposit slip; that the Union Avenue Bank of Commerce is a member of the Kansas City Clearing House Association, but is not a member of the Federal Reserve System.

Defendant introduced Regulation J of the Rules and Regulations adopted for, and used by, Federal Reserve Banks, and a general letter from the Federal Reserve Bank showing the manner and method of handling items for collection, the pertinent parts of which, if necessary, will be mentioned in the course of the opinion.

The defendant's assistant cashier testified that the general letter and Regulation J were in force throughout the year 1925; that the First State Bank of Cunningham was not a member of the Federal Reserve Bank of Kansas City but was a bank from which defendant collected checks; that it has been the custom for many years when checks of any nature were received for collection to send the same to the bank on which they are drawn or another agent in the same town, and accept in payment a draft either on Kansas City or some other reserve city; that remittances were seldom made in cash; that the cashier's check for $3180 was received by defendant for collection on August 25; that defendant did not receive the item from the Commerce Trust Company but did receive it from defendant's Oklahoma City branch; that four days are required to collect items at Cunningham, which is the shortest possible schedule; that defendant received a draft from the Cunningham bank which included the item in question and endeavored to collect the draft from August 31 until about the 2nd or 3rd of September, when the Cunningham bank closed; that when the draft was dishonored defendant notified the Cunningham bank and requested that it deposit sufficient funds with the Federal Trust Company to cover the draft; that such request was by 'phone and by wire; that the draft was presented daily, sometimes two or three times a day, to the Federal Trust Company; that he never made demand of the Cunningham bank for the cash; that at the time the $3180 check was sent to Cunningham, Kansas, other items were included, the total of which is $8564.78, all of which were drawn upon or payable by the Cunningham bank; that a record of the said

other items was not kept by defendant; that it was the custom to send an item for collection direct to the debtor; that he considered the regulation covered that subject. Several other witnesses testified that it was the custom in banking circles to send checks direct to a bank owing the same and to not demand a remittance in cash.

The first question to be decided is whether the court erred in over-ruling defendant's demurrer the ground of which was, and is, that the petition wholly fails to state *any* cause of action. If the petition is justly open to that charge, then the defect is *not* one which is *waived* by answering over, as plaintiff so earnestly contends. Such defect in a petition is one that follows it throughout the case, even after verdict and on up into the appellate court where it can still be asserted with force and effect, and that too even though no demurrer has been filed. [Hoffman v. McCracken, 158 Mo. 337; Welch v. Diehle Estate, 278 S. W. 1057.] If neither party raises the point, it is the duty of the appellate court to raise it *sua sponte*. [Greer, Admr., v. St. Louis Iron Mountain, etc., R. Co., 173 Mo. App. 276.] And if the petition is in such condition, the court cannot look to averments in the answer to determine its sufficiency; the petition must stand on its own foot, and its sufficiency be determined by its own averments. [Linn County Bank v. Mary L. Clifton, 263 Mo. 200.] It may, perhaps, not be strictly accurate to say that where the petition states no cause of action the demurrer thereto is not waived by answering over. What is meant is that the fatal defect and the point made therein are not waived by the answer, but if the point is made and relied on in the appellate court such point is still effectual.

Let us see, therefore, whether the petition is so fatally defective as to state no cause of action.

The charge or charges of negligence therein are stated as follows:

1. That defendant "carelessly and negligently *forwarded the same* (said cashier's check) *direct to the First State Bank of Cunningham, Kansas,* for collection and payment," on receipt of which, said bank stamped said check paid and issued its draft in payment therefor drawn on the Federal Trust Company of Kansas City, Missouri, and forwarded same to the defendant;

2. That thereafter defendant "carelessly and negligently *accepted said draft* from the First State Bank of Cunningham, Kansas, in payment of said cashier's check."

We have searched the petition carefully, and fail to find any other allegations wherein are alleged any other act or acts of negligence which, even by the most liberal construction authorized by Section 801, Revised Statutes 1919, can be tortured into an allegation or allegations of any other grounds of negligence as a cause of action.

The first ground of negligence above stated, namely, the sending of the check direct to the bank on which it was drawn, was an effective charge of negligence up to a certain time. [American Exchange, etc., Bank v. Metropolitan Natl. Bank, 71 Mo. App. 451; Maronde v. Vollenweider, 279 S. W. 774.] But ever since the enactment, on May 30, 1919, of Sec. 10159d, Laws 1919, p. 606, now Sec. 2821, Revised Statutes 1929, authorizing "any bank receiving any check drawn upon or payable at any other bank in another city or town whether within or without this State, to forward such instrument for collection directly to the bank on which it is drawn, and the failure of such payer bank because of its insolvency or other default to account for the proceeds thereof *shall not render the forwarding bank liable therefor,* provided such forwarding bank shall have used due diligence in other respects," etc., removes all taint of negligence from said action in sending the check direct, except where due diligence has not been used. Said section is not mentioned in Maronde v. Vollenweider, supra, and presumably the court's attention was not called to said section, for it was in force at the time of the acts involved therein, to-wit, 1921. The necessary effect of this statute is to authorize the forwarding bank to accept a draft of the drawee or paying bank in remittance. The statute not only authorizes direct sending, but it exempts the forwarding bank from liability, if the drawee or paying bank fails to account for the proceeds on account of insolvency or other default. We have not been able to find any case in this State where said section has been construed or given effect, but similar statutes have been before the courts of other States and have been given controlling effect. [See Dudley v. Phenix-Gerard Bank, 114 So. 118; Federal Land Bank v. Barrow, 127 S. E. 3; Qualls v. Farmers, etc., Bank, 149 S. E. 546; Hicks Co. Ltd. v. v. Federal Reserve Bank, 296 S. W. 46; Adams County v. Meadow Valley Bank, 277 Pac. 575, 578.] Since the petition charges no negligence other than the two grounds above stated, it is clear that it states no cause of action.

But plaintiff says that the petition charges that defendant "had no authority from this plaintiff to . . . accept from the First State Bank of Cunningham, the drawer thereof, a draft on the Federal Trust Company of Kansas City or anything else except lawful money of the United States in payment thereof; that it was the duty of said defendant in collecting said cashier's check to receive and accept from the First State Bank of Cunningham, Kansas, only lawful money of the United States in payment thereof and in *sending* said cashier's check *direct* . . . and in *accepting* said *draft* . . . defendant acted in a careless and negligent manner and failed to use due diligence in the collection of said check," and that the Cunningham bank, at all times from August 21, 1925, to Sep-

tember 3, 1925, had money and available cash items sufficient to pay said cashier's check, and the defendant "by the exercise of due diligence could have collected the same in cash." And from these, plaintiff argues that they are *also* grounds of negligence on which recovery is sought and in which the negligence consists of *delay* in sending the check. But it is manifest that these so-called *other grounds* do not extend further, nor include any negligence other, than that contained in the *two grounds* heretofore considered and found to be insufficient under the statute, Section 2821. The charge that the defendant "failed to use due diligence in the collection of said check" is connected with. and relates to the preceding words "in sending said cashier's check *direct* to said . . . First State Bank of Cunningham . . . and accepting said draft in payment thereof." The charge that the "defendant by the exercise of due diligence" could have collected the same in cash should be read in connection with the charge that defendant was required to collect in cash and in connection with the immediately preceding allegation that the Cunningham bank had sufficient cash on hand to pay the cashier's check in cash, and the whole means, if it means anything, that the check could have been collected in cash, and the reason it was not so collected was because defendant accepted a *draft* instead and made no demand for cash. Or in other words, the allegation is that the Cunningham bank had cash to pay the check, and then it is attempted to·be said that if cash had been demanded in presenting it, as plaintiff says was required, the cashier's check would have been paid in cash. There is nothing said in the petition about *delay* in sending the check, and hence the negligence and lack of due diligence can refer *only* to what the plaintiff specified as negligence, namely, the sending of the check direct and the acceptance of a draft instead of cash. If these so-called *other allegations* were intended to refer to *other acts* of negligence such other negligent acts are. nowhere stated and, therefore, the said other allegations are *mere legal conclusions* only, with no statement of *issuable* facts, either traversable or demurrable, and are to be treated as no statement at all. [Mallinckrodt Chemical Works v. Memnich, 169 Mo. 388, 397.] This will instantly and clearly appear, if, on the theory that these so-called *other* allegations refer to other acts of negligence, we ask the questions, "In what *way* did the defendant 'act in a careless and negligent manner?'" and "In what *way* did the defendant 'fail to use due diligence in the collection of said check?'" There is no answer to these, except those already stated, namely, that the check was *sent direct* and a *draft* was accepted instead of *cash*. The matter now being considered finds ample support in the following authorities, in addition to the Mallinckrodt case, supra, to-wit: Sidway v. Missouri Land, etc., Co., 163 Mo.

342, 373-4; Lewis v. James McMahon Co., 307 Mo. 552, 567; State ex rel. v. Burney, 23 S. W. (2d) 117; Gibson v. Chicago Great Western R. Co., 225 Mo. 473; State ex rel. v. Lee, 288 Mo. 679; State ex rel. v. Dick Bros., etc., Co., 270 Mo. 100.

Moreover, if these so-called other allegations could be regarded as alleging other grounds of negligence they would be only *general* charges and would not be allowed to supercede the two *specific* charges, for the latter must prevail over the former, and the plaintiff can recover, if at all, only on the *specific* charges. [Weldhier v. Hannibal, etc., R. Co., 71 Mo. 514; Orcutt v. Cetury Bldg. Co., 201 Mo. 424, 443; McCullough v. Powell Lumber Co., 205 Mo. App. 15, 23.]

Nor was plaintiff's petition aided by defendant's answer. Indeed, this is not a case wherein the defect of the petition can be aided by the answer, any more than it could be aided by a reply. The case of Priess v. St. Louis Co., 231 Mo. 332, 339, cited by plaintiff to support its claim of aider by answer, was where the petition was defective in *not stating* that the contract sued on *was in writing*, but the answer alleged that it *was*, so of course the petition was relieved of the consequences of that omission. The same is true of Rickets v. Hurt, 150 Mo. 64, for there the petition, in suit on a bond guaranteeing performance of a contract by defendant, failed to allege performance or an offer to perform on plaintiff's part, which the answer supplied. As we understand the doctrine of aider by answer, it applies only in those cases where the plaintiff has stated facts upon which a right of recovery is based and some material allegation is omitted which the answer supplies; but the answer can never supply the statement of the cause of action itself. [49 C. J., p. 863, sec. 1273 (4); Spurdle v. Hyde, 247 Mo. 32; Coulter v. Coulter, 124 Mo. App. 149.] But in the case at bar, the petition, outside of the so-called cause of action based on the two alleged grounds of negligence which Section 2821 has invalidated, *failed to allege any cause of action whatever* based on negligent delay, and this the answer did not aid, nor is it seen how it could do so. The part of the answer, relied upon by plaintiff as aiding the petition in stating a cause of action on any additional ground of negligence, is the clause saying that "in due course of business and without any negligence or default on its part, but *in accordance with the aforesaid rules and regulations authorized by law*, it *promptly forwarded* said cashier's check to the said First State Bank of Cunningham for collection and remittance" etc. The above quoted part of the answer shows on its face that it was dealing with the alleged negligence in sending the check *direct* and in accepting a *draft* instead of demanding *cash*. The answer quoted is not made in defense of any ground or grounds of negligence other

than the two charged in the petition. Moreover, if by any strained or harsh construction, it should be deemed to be in answer to any such other ground of negligence, it does not set out nor contain any of the "constitutive" indispensable elements of a cause of action based on delay. Hence, if the answer be relied on as aiding the petition, we have a petition alleging, in support of such cause of action, mere conclusions of law, and an answer, aiding the petition in that regard, by asserting *other mere conclusions* of law, a remarkable situation indeed! For, in that situation, we would have a case in which, although there was a petition and an answer, *no issue of fact could possibly arise.* In addition to all that is said in the foregoing, the judgment herein cannot be allowed to stand for the following reasons:

1. No issue as to *delay*, either negligent or otherwise, in forwarding the cashier's check was raised by the pleadings. The petition did not allege any as a ground of recovery, and the answer of defendant, so far from admitting any delay, asserted that—

"2. This defendant admits and avers that upon or about August 25, 1925, it received from the Commerce Trust Company of Kansas City the check mentioned in plaintiff's petition, *and that thereupon it forwarded the same* to the First State Bank of Cunningham, Kansas, for collection and remittance; etc."

The *reply* did not traverse any of these allegations of the answer. Indeed the reply did not traverse anything in paragraphs 1, 2 and 3, and as will be seen by an inspection of the reply shown hereinabove. Plainly the above allegations of the answer were not considered *material* allegations, otherwise they would have been denied. But, if they were material, then the matter is governed by the rule stated in State ex rel. v. Montgomery, 291 S. W. 472, l. c. 474, where it is said:

"every pleading is taken to confess such traversable matters alleged on the other side as it does not traverse. [Perry on Common-Law Pleading, 281; Carl & Hardwicke v. Mann, 4 Mo. 273; Section 2059, R. S. 1919." (Now Sec. 1611, R. S. 1929.)]

The aforesaid Section 2059 in the above quotation refers, of course, to proceedings in prohibition, and provides that the proceedings therein "shall conform to the code of civil practice." And, in that code, Sec. 932, Revised Statutes 1929, provides that:

"An issue of fact arises: First, upon a material allegation in the petition controverted by the answer; or second, upon new matter in the answer controverted by the reply;" etc.

So that, clearly, "negligence on account of *delay* in forwarding the check" was not *in issue* at the trial. And, even though it could be said that the evidence showed delay in sending the check yet the judgment herein cannot stand or be preserved on that ground for

plaintiff's right of recovery herein is limited to the *issues presented* and must be determined thereby, and *not* from such evidence. [Daniel v. Pryor, 227 S. W. 102, 105; Mark v. Williams Cooperage Co., 204 Mo. 242; State ex rel. v. Ellison, 176 S. W. 11, 13; Zasemourich v. American Mfg. Co., 213 S. W. 799, 802-3.]

Again, the petition, showing on its face by its own affirmative allegations that no charge is made of negligence in *delay* in forwarding said check, or that delay in forwarding it caused the loss, and said petition failing to set out any constitutive facts to support a valid judgment based on that ground, it (the petition) cannot be aided in that respect by verdict. [Shaver v. Mercantile, etc. Ins. Co., 79 Mo. App. 420, 425; Walrath v. Crary, 222 S. W. 895, 896; Hart v. Harrison Wire Co., 91 Mo. 414, 420.]

The stipulation or agreed statement of facts cannot be regarded as admitting negligence not charged in the petition, but as being drawn in view of the two charges of negligence, namely, forwarding the check *direct* to the debtor and accepting a *draft* instead of *cash*. While the stipulation *may* be subject to the construction that defendant admits receiving the check on the 22nd but did not forward it until the 25th, thereby creating a delay of three days, yet it will be seen, from the stipulation itself, that it does not *affirmatively* so state. Paragraph 9 of the agreed stipulation, or agreed statement of facts, says that on August *22nd,* the Commerce Trust Company *endorsed* the check (in the manner therein set out) and then concludes by saying "and delivered the same to the Federal Reserve Bank of Kansas City for collection." Paragraph 10, immediately following, says "That on August *25,* 1925, defendant Federal Reserve Bank of Kansas City endorsed said check as follows (setting out the manner of so endorsing it) and *thereupon* it forwarded the same to the First State Bank of Cunningham, Kansas, for collection and remittance." So that paragraph 10 says that the endorsement was made August 25 and *thereupon* the check was forwarded; but no such statement is contained in paragraph 9 showing *when* the Commerce Trust Company delivered the check to the defendant. The stipulation also provided that "either party may introduce additional facts in the case." And it was doubtless in pursuance of this that witness, Tyner, testified, without objection, that the Federal Reserve Bank received the check from an Oklahoma bank, and indirectly from the Commerce Trust Company, on August *25th,* 1925, and then when plaintiff's counsel, cross-examining, referred to the stipulation as saying the defendant received the check direct from the Commerce Trust Company, defendant's counsel remarked "On the 25th," which statement was not controverted or objected to in any way; and later, the witness went on to state that it took at least four days for the check to go from Kansas City to Cunning-

ham. (The draft in payment of said check was sent or accepted on August 30th.) There was no' *testimony* of any witness controverting that of Tyner that the check was received by defendant on the 25th, and *no evidence* to controvert it, *unless* the stipulation as to agreed facts be construed as saying it was on the 22nd. So that there is *no evidence* to support the judgment based on negligent delay from the 22nd to the 25th in forwarding the check to the Cunningham bank.

It is manifest on the face of the record that the case was not tried on any theory of negligent delay in forwarding said check, but only on the two specific acts of negligence hereinbefore set out and discussed. In other words, negligent delay was not litigated, and hence we are not in a position to pass on the question whether such delay, if any be established, was the cause, or the proximate cuse, of the loss.

It would seem that Section 2821, Revised Statutes 1929, not only expressly authorized defendant to send the cashier's check *direct* to the Cunningham bank, but, by exempting defendant from all damage caused by the failure of the latter to account for the proceeds, necessarily authorized defendant to accept a *draft* instead of *cash* without liability for so doing. Besides, the check was delivered to and accepted by defendant for forwarding and collection under and pursuant to the rules and regulations governing Federal Reserve Banks, and these not only authorize said defendant bank to receive checks to be forwarded for collection and to send them to the payer bank *direct,* but also to *accept drafs* in payment thereof. These rules and regulations, made by the Federal Reserve Board and by Federal Reserve Banks, are authorized by law, i. e., by Acts of Congress, and, in acting as clearing houses, as in this case, they (said rules and regulations) fix the terms which determine the rights of Federal Reserve Banks; and all parties are to be considered as having dealt with each other in such matters under and pursuant to such terms. [Early v. Federal Reserve Bank of Richmond, 261. U. S. 84, 50 Sup. Ct. 235.] In the discharge of their "duties with respect to collection of checks deposited with them and with respect to performing the functions of a clearing house the several reserve banks are *empowered to adopt any reasonable measure designed to accomplish these purposes.* To that end a federal reserve bank may send checks to the drawee bank directly for *remittance* through the mails of collections without cost of exchange. If the drawee bank *refuses to remit* without deduction of the cost of exchange, it is in the power of the several federal reserve banks to employ any proper instrumentality or agency to collect the checks from the drawee bank and it may legitimately pay the necessary cost of this service." [American Bank & Trust Co. v. Federal Reserve Bank of Atlanta, 280

Fed. 940, 1. c. 941-2.] (Italics ours.) In Hirning v. Federal Reserve Bank, 42 Fed. (2d) 925, 1. c. 926, it was held that the Reserve Bank was a mere agent in forwarding the checks, and "under the rules which governed its operations, it had the authority to send the checks to the Brookings (debtor) Bank for collection and take drafts which were sent in payment therefor." (Italics ours.) [See also Chicago, M. & St. P. Ry. Co. v. Federal Reserve Bank of San Francisco, 260 Pac. 262; Fergus County v. Federal Reserve Bank of Minneapolis, 244 Pac. 883; Transcontinental Oil Co. v. Federal Reserve Bank, 214 N. W. 918.] All the evidence in the case at bar shows that such was, and is, the practice of the Federal Reserve Banks in performing their functions in such matters as those involved in this case. The reserve bank acted only as the agent of the plaintiff in receiving said cashier's check and in forwarding it for collection. And plaintiff, in putting its check in such channels, did so under the contract, or terms and conditions, governing these banks. It is only on the theory of such agency that an action of this kind can be maintained. Since the agency contract is the foundation of any cause of action plaintiff may have, it must accept such contract as it exists and *in toto*. It cannot accept parts thereof and reject other parts as not within the authority of the agent. [Shinn v. Guyton & Harrington Mule Co., 109 Mo. App. 557.] Plaintiff is bound to know the terms upon which defendant could or would accept such employment or agency, and therefore must be held to have consented and agreed that not only the check might be sent *directly* to the Cunningham bank for collection but also that the said bank might remit by draft. [Transcontinental Oil Co. v. Federal Reserve Bank of Minneapolis, supra.]

It follows from what has been said herein that the petition states no cause of action. Hence the judgment must be reversed and the cause remanded. It is so ordered. All concur. While it is true, the holding herein that it is not negligence to send a check for collection direct to the debtor bank because of Sec. 2821, Revised Statutes 1929, is not the holding in the decision of the Springfield Court of Appeals in Maronde v. Vollenweider, 279 S. W. 774, still we do not deem our decision herein to be strictly *in conflict* with the Springfield court, for that decision was written without reference to said statute as it was not called to the attention of, or considered by, said court. Since the statute necessarily controls in the matter, it is certain that the Springfield court would not have ruled contrary to it, had the statute been invoked or noticed. Therefore, we see no reason for certifying and transferring this cause to the Supreme Court.