## OKLAHOMA GAS & ELECTRIC CO. v. FIRST NAT. BANK OF OKLAHOMA CITY et al.

No. 26085. March 2, 1937.

Rehearing Denied March 23, 1937.

Rainey, Flynn, Green & Anderson and Calvin Jones, for plaintiff in error.

Ames, Cochran, Ames & Monnet and H. G. Leedy, for defendant in error Federal Reserve Bank of Kansas City.

Wilson & Wilson, for defendant in error First National Bank of Oklahoma City.

GIBSON, J. This action was commenced in the district court of Oklahoma county by the Oklahoma Gas & Electric Company against the First National Bank of Oklahoma City and the Federal Reserve Bank of Kansas City, Missouri, to recover on a check drawn by said electric company on its own account in the First National Bank of Sapulpa. The parties will be referred to herein as they appeared in the trial court.

Under date of June 20, 1923, the plaintiff, Oklahoma Gas & Electric Company, drew a check for the sum of $2,500 upon the First National Bank of Sapulpa, payable to the order of Oklahoma Gas & Electric Company, General Office, Oklahoma City, Okla. The plaintiff endorsed the check as follows: "Pay to the order of First National Bank, Oklahoma City, Oklahoma, for deposit only, Oklahoma Gas & Electric Company General Office Account, W. R. Emerson, Treasurer." On June 22, 1923, plaintiff deposited the check in the defendant Oklahoma City bank, and that bank in due course delivered the same to the Oklahoma City branch of the defendant Reserve Bank for collection. Thereupon the check was sent direct by mail to the Sapulpa bank for collection.

Accompanying said check to the Sapulpa bank were other checks aggregating approximately $19,000 drawn by depositors of that bank upon their respective accounts. On June 23rd the Sapulpa bank drew a check or draft on its reserve account in the Reserve Bank and payable to the order of the latter

476

for the sum of approximately $22,000, and mailed same to the branch bank at Oklahoma City. On that day plaintiff's check was marked paid and charged to its account in the Sapulpa bank. That bank closed at the regular hour on June 23rd, which was Saturday, and failed to reopen thereafter and was placed in charge of a receiver. The Reserve Bank notified the Oklahoma City bank of such failure and that final collection of the check had not been made. Thereupon the check was charged to plaintiff's account, and this action resulted.

Plaintiff charges the defendant banks with negligence in sending the check direct to the drawee bank for collection and in accepting in payment anything other than cash. It is further charged that, since the foregoing method of collection was adopted, it became the duty of the Reserve Bank to charge the drawee bank's reserve account then held by the Reserve Bank with the amount of plaintiff's check.

Judgment was for defendants, and plaintiff has appealed.

The relationship of the plaintiff and the defendant Oklahoma City bank was that of principal and agent arising by virtue of express contractual obligation. The conditions upon which the Oklahoma City bank accepted plaintiff's check were printed upon plaintiff's duplicate deposit slip, and plaintiff was fully aware of those conditions when the deposit was made. They read as follows:

"Items deposited are received for collection only credited subject to final payment in cash, with rights reserved to charge back or enter for collection. Acting only as agent for depositor, items may be forwarded through ordinary channels but this bank assumes no responsibility for neglect, default, or failure of such agents, including failure to follow instructions to protest; nor losses in the mails. Should any collecting agent convert the proceeds, or remit in returns afterward dishonored credits given will be charged back, although item, itself, may have been paid and not returnable. When deemed best, items may be sent for collection to banks on which drawn: if so sent, above conditions are neither waived nor suspended. Items on this bank not found good at close of business on day of deposit, will be charged back to depositor."

Even in the absence of that agreement the defendant bank was the agent of plaintiff for the purpose of collecting the check, and was charged with ordinary care and diligence in performing that duty. Bank of Big Cabin v. English, 27 Okla. 334, 111 P. 386; Crawford v. First State Bank, 120 Okla. 243, 251 P. 481.

It has been stipulated that the Oklahoma City bank by placing the check in the hands of the Reserve Bank employed the ordinary channels for collection. Such action was clearly pursuant to its agreement with plaintiff. It is not contended that in so doing it failed to exercise ordinary care and diligence. The Oklahoma City bank, as agent for plaintiff, was authorized by the agreement to employ the Reserve Bank as subagent to collect the check. Under the plain terms of the agreement it assumed no responsibility for neglect, default, or failure on the part of the subagent, the Reserve Bank, in making the collection. After the employment of the Reserve Bank the responsibility of the Oklahoma City bank as collecting agent ceased (2 C. J. 687, sec. 346), and attached again only after the collection found its way back to said bank. After its employment the Reserve Bank acted as agent for plaintiff as the owner of the check. 2 C. J. 291, sec. 352. See, also, 2 C. J. S., Agency, p. 1362, sec. 137.

Our attention has been directed to the so-called New York and Massachusetts rules applied in situations of this character, and also to the case of Federal Reserve Bank v. Malloy, 264 U. S. 160, wherein said rules are expounded or applied. Both of said rules, so far as they apply here, recognize the right of the owner of the check under contractual relationship as here existing to maintain an action against the subagent bank for negligence or wrongful handling of the collection.

In the instant case the rights and duties of the Oklahoma City bank were clearly defined by its agency agreement with plaintiff. It has in no manner violated that agreement.

The question involving the Reserve Bank's alleged negligence and default in attempting to collect the check is to be determined by an application of the laws governing the duties of subagents. In the instant case the agent, by express authority from the principal, employed the subagent. In such case, where the subagent knows of the prior agency, the subagent represents the principal in the same manner as the original agent. 2 C. J. 690, sec. 350: see, also, 2 C. J. S., Agency, p. 1361, sec. 137. In the absence of some custom or usage of business to the contrary, the subagent's duties to the principal are defined and controlled by the original agency agreement, unless the principal has consented to or ratified other means and methods employed or to be employed by the subagent in furtherance of the agency.

Here, under the general rule applying in such cases, the Federal Reserve Bank's duties to the plaintiff were defined by the agreement

between plaintiff and the Oklahoma City bank. It may not escape those duties unless there existed a custom, chargeable to plaintiff's knowledge, whereby the duties of the subagent to the principal were restricted or enlarged in some manner outside the express and implied terms of the original agreement, or unless by express law the subagent was prohibited from acting under all the terms of such agreement; or unless the plaintiff has ratified or acknowledged a wholly different agency relationship between it and the Reserve Bank. It is not contended that the subagent in the instant case was unaware of the original agency.

The Reserve Bank interposes in defense and justification of its actions so complained of by plaintiff certain rules and regulations promulgated by the Federal Reserve Board and known as Regulation J, whereby each Federal Reserve Bank is made a clearing house for its member and nonmember banks, and providing that said Reserve Banks in collecting checks and drafts would act as agent only under rules and regulations to be adopted by the bank.

Pursuant to the above authority the defendant Federal Reserve Bank prepared and circulated among its member banks, including the defendant Oklahoma City bank and the Sapulpa bank, certain rules and regulations known as "General Letter D-1." This letter, or circular, purporting to fix the duties of the Reserve Bank is urged also as a defense in that it fixes, or attempts to fix, the duties of the Reserve Bank when acting as collection agent. Its contention is that it has fully performed its duties as set out in said Regulation J and General Letter D-1, and that the plaintiff is bound thereby.

Ordinarily, if plaintiff, in the absence of knowledge of the existence of the aforesaid rules and regulations, and in the absence of subsequent ratification, is to be bound thereby, the provisions thereof must be accorded the force and effect of law. The United States Supreme Court and courts of certain states seem to have so considered said regulations, and have done so upon the theory, evidently, that they were promulgated by express permission of Congress. (12 U. S. C. A. sec. 248 and note.) See Early v. Federal Reserve Bank, 281 U. S. 84, 50 S. Ct. 235, 74 L. Ed. 718; Fergus County v. Federal Reserve Bank (Mont.) 244 P. 883; Massey-Harris Harvester Co. v. Federal Reserve Bank, 226 Mo. App. 916, 48 S. W. (2d) 158; Transcontinental Oil Co. v. Federal Reserve Bank (Minn.) 214 N. W. 918; Osage Nat. Bank v. Federal Reserve Bank (Minn.) 238 N. W. 44; C., M.

& St. P. Ry. Co. v. Federal Reserve Bank (Utah) 260 P. 262. In the Early Case the Supreme Court, speaking of a circular similar to the one here under consideration and issued pursuant to Regulation J, said: "All parties must be taken to have dealt upon the terms of the circular that we have quoted."

The Early Case was an action between the receiver of a member bank and a Federal Reserve Bank. That decision, it may be said, does not fully support the proposition that the regulations aforesaid have the force and effect of law so as to charge depositors with knowledge of the provisions thereof.

However, under the circumstances of the present case, it is not absolutely necessary that we adopt or reject the views expressed on that point in the foregoing cases. As we have in effect said, when a subagent, knowingly dealing with an agent, agrees with him to perform a duty for the principal, such subagent may legally act only in conformity with the authority given the agent in the first instance. But in this case the principal agreed that the check might be "forwarded through ordinary channels," and it is stipulated that the check was so forwarded. Under such circumstances the principal must be held to have consented to the contract existing between the agent and the subagent relative to the character of duties to be undertaken: the collection of the check. That contract in this case is contained in Regulation J and General Letter D-1.

The purpose of Regulation J was "to afford both to the public and to the various banks of the country a direct, expeditious and economical system of check collection and settlement of balances. * * *" The Federal Reserve Bank is therein authorized to act as agent only in collecting items, and its liability is limited to negligence. Clearing banks are required to authorize the Reserve Bank to send checks for collection to the banks on which the checks are drawn. Each Reserve Bank is required to promulgate rules and regulations governing the details of its operation as a clearing house, and such rules and regulations are made binding upon all banks clearing through the Reserve Bank.

General Letter D-1, circulated pursuant to the above regulation, contains provisions similar to those contained in said Regulation J, and provides further that the Reserve Bank is authorized to send checks for collection direct to the bank on which they are drawn and to accept therefor cash or bank draft.

The letter contains instructions for the payment of cash letters as follows:

"Payment for cash letters by collecting or paying banks should be made by one of the following methods:

"(a) Shipment of Currency (Transportation costs absorbed by Federal Reserve Bank).

"(b) Draft drawn on a Clearing House bank located in the city of the receiving office.

"(In addition to the above, exchange will be accepted as immediately available in payment for cash letters, subject to final payment, which is drawn on certain banks which have directed that all drafts drawn on them and received in payment for cash letters be immediately charged to their accounts. Further advice relative to this provision will be given upon request. See General Letter D-3.)

"(c) Authority to charge a member bank's reserve account.

"(Remittance by a member bank of other than immediately available exchange in payment for a cash letter, will be taken as authority to charge the amount of the cash letter to the account of the remitting member bank and to handle the draft remitted as a deposit to be credited when available for reserve and checking purposes in accordance with the published time schedule.)"

In view of the foregoing provisions of Regulation J and General Letter D-1, the plaintiff's charge of negligence against the Reserve Bank in sending the check direct to the Sapulpa bank and receiving therefor a draft instead of cash cannot be sustained. Those provisions constituted the contract between the parties, and the Reserve Bank in so doing acted pursuant to the contract. The provisions of the contract here distinguish this case from the Malloy Case, supra, wherein it was held that a bank was unauthorized to accept anything other than cash for the check. The general rule is that a check on a bank is payable in money, and nothing else; and a collecting agent is without authority to accept for a debt owing his principal anything but legal tender. Federal Reserve Bank v. Malloy, supra. That is true unless there exists a contract or custom to the contrary. The contract here provides to the contrary; and we find no fault with it as being against public policy. It is therefore binding upon the parties. In this respect the contract conforms to the recognized custom in this state of accepting draft in payment of the check (First National Bank v. Stockton, 117 Okla. 120, 245 P. 638); but where the agent may at his option employ one of two or more ways in performing the duty, there can be no custom (Malloy Case, supra); and the contract replaces the custom if a custom existed. Such was the circumstance here.

Plaintiff insists that, although the Reserve Bank may have acted within its rights in forwarding the check direct to the drawee bank at Sapulpa and in accepting draft instead of cash therefor, the Reserve Bank is nevertheless liable to plaintiff in that it failed to charge the reserve account of the Sapulpa bank, then held by defendant bank, with the amount of plaintiff's check. Plaintiff says that under the provisions of the contract the Reserve Bank was so bound.

In support of this contention the plaintiff relies, among other cases, upon the decision of the Supreme Court in Early, Receiver, v. Federal Reserve Bank of Richmond, supra. In that case the plaintiff in error, Early, was receiver of a South Carolina bank, a member of the Federal Reserve Bank of Richmond. The Richmond bank had forwarded for collection to the South Carolina bank certain checks drawn on the latter for collection. The checks were charged to the accounts of the respective drawers and marked paid. The bank failed, and the Richmond bank charged the amount of the checks to the reserve account of the failed bank. The receiver's suit was to recover the amount so charged against the failed bank's reserve.

The headnote in that case reads as follows:

"A Federal Reserve Bank has a lien on the reserve balance of a member bank for the amount of checks on such member bank forwarded to the member bank for collection, where the circular fixing the relations of the two banks provides that such checks may be charged to the reserve account of a member bank at any time when in any particular case it may be deemed necessary to do so, even though such charge was not made until after the member bank, being insolvent, closed its doors."

In that case the court held that the reserve deposit of the failed member bank was an identified fund and, by reason of the provisions of the circular letter there involved, a lien existed on said fund in favor of the Reserve Bank, and that said lien was for the benefit of the depositors whose checks were in process of collection. The material provisions of the letter were as follows:

" '* * * The amount of any cash letter to a member bank is chargeable against available funds in the reserve account of such member at the expiration of such transit time, which date will be shown on each cash letter. The right is reserved, however, to charge a cash letter to the reserve account of a member bank at any time when in any

particular case we deem it necessary to do so.'"

There is a distinct and material difference between those provisions and the provisions contained in the circular letter in the instant case. It is seen that under the former the Reserve Bank of Richmond was authorized to charge any cash letter sent to a member bank against its available funds in the reserve account at any time the Reserve Bank deemed it necessary to do so. In the instant case the Reserve Bank was authorized to charge the reserve account of a member bank with the amount of the cash letter only in cases where such member bank remitted in some manner other than by "immediately available exchange."

General Letter D-1 defines "immediately available exchange" as those items "collectible on date of receipt." Here the remittance was made by draft drawn directly upon the Reserve Bank. Such a draft falls clearly within the definition of "immediately available exchange."

Since the remittance here was in that form, there existed no authority on the part of the Reserve Bank to charge the amount of the cash letter to the reserve account of the Sapulpa bank. In the absence of such authority no lien could exist against said fund in favor of the Reserve Bank for the benefit of the depositor, the plaintiff in this case. The ruling in the Early Case was clearly to the effect that such authority must exist before the lien can attach. The right to charge the reserve account, and that alone, created the lien in the depositor's favor.

It is said that the draft drawn by the Sapulpa bank constituted an assignment of its reserve deposit for the benefit of the depositors whose checks were in process of collection. A check of itself does not constitute an assignment of any part of the fund upon which it is drawn. Section 11488, O. S. 1931; Ballen & Friedman v. Bank of Kremlin, 37 Okla. 112, 130 P. 539; Bank of Jefferson v. First Nat. Bank, 158 Okla. 37, 12 P. (2d) 540.

If it could be said here that the draft was issued for the benefit of plaintiff, acceptance thereof by the Reserve Bank was necessary to a completion of the assignment. Ballen & Friedman v. Bank of Kremlin, supra. The evidence here shows that the Reserve Bank learned of the failure of the Sapulpa bank before the draft arrived through the mails. Its arrival in the mails did not con-stitute an acceptance by the Reserve Bank. No other act of acceptance is shown.

The judgment of the trial court is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, BUSBY, PHELPS, CORN, and HURST, JJ., concur. WELCH, J., absent.